[No. C047697. Third Dist. Jan. 13, 2006.]

PLACER COUNTY LOCAL AGENCY FORMATION COMMISSION, Plaintiff and Appellant, v.
NEVADA COUNTY LOCAL AGENCY FORMATION COMMISSION, Defendant and Respondent;
NORTHSTAR COMMUNITY SERVICES DISTRICT, Intervener and Appellant;
TRUCKEE SANITARY DISTRICT, Intervener and Respondent.

## COUNSEL

Law Offices of William M. Wright, William M. Wright; and Scott H. Finley for Plaintiff and Appellant.

Law Office of Neil A. Eskind and Neil A. Eskind for Intervener and Appellant.

Law Offices of P. Scott Browne and P. Scott Browne for Defendant and Respondent.

Meyers, Nave, Riback, Silver & Wilson, Joseph M. Quinn, K. Scott Dickey and Ruthann G. Ziegler for Intervener and Respondent.

## OPINION

**SIMS, Acting P. J.**—This case is a turf battle between neighboring local agency formation commissions (LAFCO's) under the Cortese-Knox-Hertzberg Local Government Reorganization Act of 2000 (Gov. Code, § 56000 et seq. (the Act)).[1]

"[LAFCO's] oversee local agency boundary changes, including the incorporation and disincorporation of cities, the formation and dissolution of most special districts, and the consolidation, merger, annexation, and reorganization of cities and special districts. Each county in California has a LAFCO. In California, 58 LAFCOs are working with nearly 4,000 government agencies in 58 counties, 477 incorporated cities, and 3,000-plus special districts.

---

[1] Undesignated statutory references are to the Government Code.

"LAFCOs have been described as watchdogs, guarding 'against the wasteful duplication of services that results from indiscriminate formation of new local agencies or haphazard annexation of territory to existing local agencies.' [Citation.] The primary objectives of LAFCOs are as follows: (1) to facilitate orderly growth and development by determining logical local agency boundaries; (2) to preserve prime agricultural lands by guiding development away from presently undeveloped prime agricultural preserves; and (3) to discourage urban sprawl and encourage the preservation of open space by promoting development of vacant land within cities before annexation of vacant land adjacent to cities. . . .

"LAFCOs review proposals for the formation of new local government agencies as well as boundary changes for existing agencies. Given the extraordinary number of government agencies, cities, and special districts in the state, it is no surprise that agency boundaries often do not logically relate to one another, resulting in an overlap of service responsibilities and inefficiencies in service provision. The overarching goal of LAFCOs is to encourage the orderly formation and extension of government agencies, while balancing the competing needs in California for affordable housing, economic opportunities, and the preservation of natural resources.

"When making determinations, LAFCOs must consider the effect that any proposal will have on prime agricultural lands and open space. Specifically, LAFCOs seek to protect these resources by encouraging development away from these preserves and towards vacant urban sites.

"Moreover, LAFCOs work to discourage the irregular and chaotic growth referred to as urban sprawl, which often results in inefficient service delivery and the unnecessary loss of prime agricultural lands and open space." (Curtin & Talbert, Curtin's Cal. Land Use and Planning Law (24th ed. 2004) pp. 381–382, fn. omitted.)

The precise issue in this case is: When two counties receive services from a multicounty service district, which county's LAFCO has jurisdiction over planning matters—"spheres of influence" (§ 56076)[2] and "service reviews" (§ 56430)[3]—concerning that district's work within an individual county. The

---

[2] Section 56076 provides: " 'Sphere of influence' means a plan for the probable physical boundaries and service area of a local agency, as determined by the commission."
  "Local agency" means "a city, county, or district." (§ 56054.)
[3] Some refer to service reviews as "MSR's," meaning "municipal service reviews." Section 56430 provides in part: "(a) In order to prepare and to update spheres of influence . . . , the commission shall conduct a service review of the municipal services provided in the county . . . ."

trial court determined the "principal county"[4] LAFCO, rather than the local LAFCO of affected territory, is vested with the exclusive jurisdiction to establish the sphere of influence and conduct service reviews for a multi-county district within the boundaries of the local LAFCO's county. Plaintiff Placer County LAFCO (Placer LAFCO) appeals from the judgment entered in favor of defendant Nevada County LAFCO (Nevada LAFCO), following the submission of a stipulated set of facts, trial briefs, and oral argument to the trial court. Intervener Northstar Community Services District (Northstar), which aligns itself with Placer LAFCO, also filed an appeal from the judgment. Since the interests of plaintiff and Northstar are aligned, our reference to "plaintiff" or "Placer LAFCO" encompasses Northstar's position unless otherwise indicated. Intervener Truckee Sanitary District (TSD) has filed appellate briefs taking the same position as Nevada LAFCO.

We shall affirm the judgment.[5]

## FACTUAL AND PROCEDURAL BACKGROUND

On October 15, 2002, Placer LAFCO filed a complaint for declaratory relief, asking the trial court to construe the Act and determine (1) whether, for a multicounty district, the principal county LAFCO or the local LAFCO of affected territory is the appropriate agency to determine the sphere of influence for the portion of the district in the local LAFCO's county, and (2) which agency—Placer LAFCO or Nevada LAFCO—has jurisdiction to prepare the municipal service review for sewer services within Placer County and the sphere of influence plan for TSD within the boundaries of Placer County.

The stipulated facts, as summarized in the statement of decision, included the following:

Placer LAFCO and Nevada LAFCO are public agencies organized and existing pursuant to the Act, which establishes a local agency formation commission for each of California's 58 counties.

Intervener TSD is a special district formed under the Sanitary District Act of 1923. (Health & Saf. Code, § 6400 et seq.) TSD is an example of a multicounty district. TSD provides wastewater collection service to territory

---

[4] Section 56066 provides: " 'Principal county' means the county having all or the greater portion of the entire assessed value, as shown on the last equalized assessment roll of the county or counties, of all taxable property within a district or districts for which a change of organization or reorganization is proposed."

[5] We deny as unnecessary TSD's request (dated Mar. 25, 2005) for judicial notice of the Senate's 1994 amendment to Assembly Bill No. 3350.

within both Placer County and Nevada County. Because a greater portion of the assessed value of the TSD's taxable property lies within the boundaries of Nevada County, Nevada LAFCO is the "principal county" for TSD under the Act. (See fn. 4, *ante.*)

Intervener Northstar is a special district formed under the Community Services District Law. (§ 61000 et séq.) Northstar is an example of a single county district and is located solely within the boundaries of Placer County. In addition to wastewater collection service, Northstar also provides fire protection/emergency services, potable water, snow removal, road maintenance, street lighting, and solid waste disposal to the territory within its boundaries.

There are nine multicounty districts that provide services in both Placer and Nevada Counties. Placer LAFCO is the principal county for three of these districts—Tahoe Forest Hospital District, Tahoe Truckee Sanitation Agency, and Truckee Tahoe Airport District. Nevada LAFCO is the principal county for the other six districts—Donner Summit Public Utility District, Nevada Irrigation District, Truckee Donner Public Utility District, Truckee Donner Recreation and Park District, Truckee Fire Protection District, and TSD.

In 1993, Placer LAFCO and Nevada LAFCO entered into a joint powers agreement (JPA) whereby the two commissions adopted a joint meeting procedure to insure greater cooperation between the two commissions in actions that could have effects in both counties. The two commissions adopted an update of the sphere of influence for Donner Summit Public Utility District on June 21, 1999, and adopted an update of the sphere of influence for Truckee Fire Protection District on December 13, 1999. The JPA was terminated by Placer LAFCO in 2002 due to concern about its legality.

TSD's current sphere of influence was adopted by (principal county) Nevada LAFCO in 1983 and updated by Nevada LAFCO for territory within Nevada County in 1998.

Placer LAFCO says in its appellate brief that there is presently no conflict within Placer County between TSD's sphere of influence as adopted by Nevada LAFCO and Northstar's sphere of influence as adopted by Placer LAFCO, but TSD has proposed that its sphere in Placer County be expanded to include territory to the east of Northstar's physical boundaries, overlaying a substantial portion of Northstar's existing sphere of influence.

As described in the complaint:

"Placer LAFCo [we use the abbreviation "LAFCO" while the parties use "LAFCo," with a small case "o"] is informed and believes and thereupon alleges that TSD has submitted a request to Nevada LAFCo to review, update and modify its sphere of influence plan for its territory in Placer County and that Nevada LAFCo may act upon the request in the near future. In conjunction with such request, Nevada LAFCo is preparing a municipal service review of wastewater services within the current and prospective service area of TSD as provided by Section 56430 of the Act. A dispute has arisen between Placer LAFCo and Nevada LAFCo with respect to acting on these requests. Nevada LAFCo claims that it is the appropriate agency to conduct the municipal service review for wastewater services in order to determine the sphere of influence plan for the entirety of TSD both in Nevada County and Placer County, pursuant to its role as the principal county under Sections 56123 and 56387 of the Act. Placer LAFCo, on the other hand, disputes this interpretation of the statutes and contends that the principal county concept only applies to changes of organization or reorganization. Placer LAFCo further contends that it is the appropriate agency to prepare a separate municipal service review for sewer services and sphere of influence plan for TSD within the boundaries of Placer County pursuant to Section 56425 and 56430 of the Act. The parties agree that the issue regarding which agency is the appropriate agency to develop municipal service reviews and sphere of influence plans will arise again at such time as the existing sphere of influence plan is reviewed and modified for each of the other multi-county districts listed [in the complaint]."

The complaint alleged Northstar's sphere of influence plan would be affected by the establishment of TSD's sphere of influence plan.

The complaint asked the trial court to declare which entity was the appropriate entity to adopt the municipal service review for service provided within Placer County and the sphere of influence plan for multicounty districts (including TSD) shared by the two counties. The complaint alleged the declaration was urgently needed because the Act (§ 56425, subd. (f)) required updating of spheres of influence not less than once every five years, which would come due on January 1, 2006, and service reviews must be completed before the spheres of influence can be updated (§ 56430).[6]

---

[6] When the complaint was filed, former section 56425, subdivision (f), stated the commission "shall review and update, as necessary, the adopted sphere not less than once every five years." (Stats. 2001, ch. 667, § 2.) Effective January 1, 2006, the statute was amended to read: "On or before January 1, 2008, and every five years thereafter, the commission shall, as necessary, review and update each sphere of influence." (§ 56425, subd. (g), as amended by Stats. 2005, ch. 347, § 5.) This appeal does not require us to determine whether the amendment made any substantive change.

The trial court's statement of decision, issued on June 7, 2004, concluded the principal county LAFCO (Nevada LAFCO) had jurisdiction to determine the sphere of influence and service review of TSD services, including services within Placer County. The court also endorsed plaintiff's position that the exclusive jurisdiction to conduct municipal service reviews did not preclude an affected LAFCO from conducting its own municipal service review for (unicounty) districts that provide the same or similar services as those of multicounty districts under the jurisdiction of a principal county LAFCO. Such municipal service review may of necessity include a review of the municipal service capability of the multicounty districts within the affected county. The exclusive jurisdiction of the principal county LAFCO extended to conducting municipal service reviews of its own multicounty districts for the purposes of exercising its exclusive jurisdiction to establish spheres of influence of those districts.

The trial court also concluded, however, that the principal county's exclusive jurisdiction with respect to multicounty districts did not preclude an affected LAFCO from conducting its own service reviews for districts that provide the same or similar service as the multicounty districts, and such review may of necessity include a review of the municipal service capability of the multicounty districts within the affected county. The court said the exclusive jurisdiction of the principal county LAFCO extended to conducting service reviews of its own multicounty district for the purpose of exercising its exclusive jurisdiction to establish such district's sphere of influence. A local LAFCO retained jurisdiction potentially to establish spheres of influence that overlapped the multicounty district's sphere of influence.

The trial court entered judgment in favor of Nevada LAFCO, concluding:

1. The Act places the exclusive authority in the principal county LAFCO to establish the sphere of influence for a multicounty district, both within the principal county and in all other counties where the multicounty district has territory.

2. While the principal county LAFCO must conduct the municipal service review pursuant to section 56840 for each multicounty district under the principal county LAFCO's jurisdiction, that jurisdiction does not preclude an affected LAFCO from conducting its own municipal service reviews for the districts that provide the same or similar services as those of multicounty districts under the jurisdiction of the principal county LAFCO.

3. Nevada LAFCO has exclusive jurisdiction to prepare the sphere of influence plan for TSD within Nevada and Placer Counties.

Placer LAFCO and intervener Northstar appeal.

## DISCUSSION

### I. *Standard of Review*

██ Although LAFCO decisions are generally reviewable under a substantial evidence standard (§ 56107), this case, presented to the trial court on stipulated facts and arguments by competing LAFCO's concerning statutory interpretation, presents only questions of law on appeal. Accordingly, our review is de novo. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960]; *Chatsky & Associates v. Superior Court* (2004) 117 Cal.App.4th 873, 876 [12 Cal.Rptr.3d 154].)

██ "Where, as here, the issue presented is one of statutory construction, our fundamental task is 'to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' [Citations.] We begin by examining the statutory language because it generally is the most reliable indicator of legislative intent. [Citation.] We give the language its usual and ordinary meaning, and '[i]f there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs.' [Citation.] If, however, the statutory language is ambiguous, 'we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history.' [Citation. ] Ultimately we choose the construction that comports most closely with the apparent intent of the lawmakers, with a view to promoting rather than defeating the general purpose of the statute. [Citation.]" (*Allen v. Sully-Miller Contracting Co.* (2002) 28 Cal.4th 222, 227 [120 Cal.Rptr.2d 795, 47 P.3d 639].)

### II. *The Issues*

Placer LAFCO says the issue on appeal is whether Placer LAFCO or Nevada LAFCO determines the "sphere of influence" and performs the "service reviews" for a multicounty district within Placer County. Placer LAFCO admits Nevada LAFCO, as the "principal county" (§ 56066, fn. 4, *ante*) with respect to TSD, has jurisdiction over "changes of organization"[7] such as an annexation to TSD affecting Placer County. Placer LAFCO's position is that a "principal county" has jurisdiction *only* over "changes of organization" affecting other counties, *not* over "spheres of influence" (which

---

[7] The Act refers to "change of organization or reorganization" (§ 56066), but since reorganization is defined as two or more changes of organization in a single proposal (§ 56073), for ease of reference our use of the term "change of organization" in this opinion will encompass reorganization unless otherwise indicated.

are planning tools[8]) or "service reviews," because section 56066 defines "principal county" with reference to districts "for which a change of organization or reorganization is proposed." Placer LAFCO notes a LAFCO, as a creation of statute, has only such powers as are bestowed on it by the Legislature. (*Timberidge Enterprises, Inc. v. City of Santa Rosa* (1978) 86 Cal.App.3d 873, 883–884 [150 Cal.Rptr. 606].)

## A. Statutory Framework

The legislative intent of the Act is expressed in section 56001, which provides:

"The Legislature finds and declares that it is the policy of the state to encourage orderly growth and development which are essential to the social, fiscal, and economic well-being of the state. The Legislature recognizes that the logical formation and determination of local agency boundaries is an important factor in promoting orderly development and in balancing that development with sometimes competing state interests of discouraging urban sprawl, preserving open-space and prime agricultural lands, and efficiently extending government services. The Legislature also recognizes that providing housing for persons and families of all incomes is an important factor in promoting orderly development. Therefore, the Legislature further finds and declares that this policy should be effected by the logical formation and modification of the boundaries of local agencies, with a preference granted to accommodating additional growth within, or through the expansion of, the boundaries of those local agencies which can best accommodate and provide necessary governmental services and housing for persons and families of all incomes in the most efficient manner feasible.

"The Legislature recognizes that urban population densities and intensive residential, commercial, and industrial development necessitate a broad spectrum and high level of community services and controls. The Legislature also recognizes that when areas become urbanized to the extent that they need the full range of community services, priorities are required to be established regarding the type and levels of services that the residents of an urban community need and desire; that community service priorities be established by weighing the total community service needs against the total financial resources available for securing community services; and that those commu-

---

[8] Although Placer LAFCO's brief says, "a sphere of influence is the actual service boundary adopted by formal action of the LAFCo," by definition, it is a "plan" for a "probable" boundary. (§ 56076.)

nity service priorities are required to reflect local circumstances, conditions, and limited financial resources. The Legislature finds and declares that a single multipurpose governmental agency is accountable for community service needs and financial resources and, therefore, may be the best mechanism for establishing community service priorities especially in urban areas. Nonetheless, the Legislature recognizes the critical role of many limited purpose agencies, especially in rural communities. The Legislature also finds that, whether governmental services are proposed to be provided by a single-purpose agency, several agencies, or a multipurpose agency, responsibility should be given to the agency or agencies that can best provide government services."

Section 56301 provides: "Among the purposes of a commission are discouraging urban sprawl, preserving open-space and prime agricultural lands, efficiently providing government services, and encouraging the orderly formation and development of local agencies based upon local conditions and circumstances. One of the objects of the commission is to make studies and to obtain and furnish information which will contribute to the logical and reasonable development of local agencies in each county and to shape the development of local agencies so as to advantageously provide for the present and future needs of each county and its communities."

■ Under the Act, when a service district (such as TSD) provides services in multiple counties, the Act designates as "principal county" the county having most of the assessed value of the district's taxable property.[9] (§ 56066.)

The principal county has jurisdiction over changes of organization. (§ 56123.) "Change of organization" means a city incorporation/disincorporation; a district formation/dissolution; an annexation to, or detachment from, a city or district; a consolidation of cities or special districts; or a merger or establishment of a subsidiary district. (§ 56021.) "Reorganization" means two or more changes of organization initiated in a single proposal. (§ 56073.) Section 56387 provides: "Except as otherwise provided in Section 56388 [LAFCO's may agree to transfer of jurisdiction], if any district is, or as a result of a proposed change of organization or reorganization would be, located in more than one county, the commission of the principal county shall have exclusive jurisdiction over the matters authorized and required by this part

---

[9] As indicated, Placer LAFCO's argument is that the statute defining principal county (§ 56066, fn. 4, *ante*), by referring to changes of organization, limits the principal county's jurisdiction to changes of organization.

[part 2 of the Act]." (§ 56387.) Part 2 of the Act includes determination of spheres of influence (§ 56425)[10] and service reviews (§ 56430.)[11]

A sphere of influence is defined as "a plan for the probable physical boundaries and service area of a local agency." (§ 56076, fn. 2, *ante*; see also § 56425, fn. 10, *ante* [determination of spheres of influence for orderly development and coordination of local agencies].) "Service reviews" are conducted in order to prepare and update spheres of influence. (§ 56430.) "Service" means "a class established within, and as a part of, a single function, as provided by regulations adopted by the commission pursuant to Chapter 5 (commencing with Section 56820) of Part 3." (§ 56074.)

"A sphere of influence is a flexible planning and study tool to be reviewed and amended periodically as appropriate." (*City of Agoura Hills v. Local Agency Formation Com.* (1988) 198 Cal.App.3d 480, 490 [243 Cal.Rptr. 740].) Upon determination of a sphere of influence, the commission shall adopt that sphere, and shall review and update, as necessary, the adopted sphere every five years. (§ 56425, subds. (f), (g).) The sphere of influence is one of the factors to be considered in reviewing a proposal for a change of

---

[10] Section 56425 provides in part: "(a) In order to carry out its purposes and responsibilities for planning and shaping the logical and orderly development and coordination of local governmental agencies so as to advantageously provide for the present and future needs of the county and its communities, the commission shall develop and determine the sphere of influence of each local governmental agency *within the county* and enact policies designed to promote the logical and orderly development of areas within the sphere. [¶] . . . [¶] (e) In determining the sphere of influence of each local agency, the commission shall consider and prepare a written statement of its determinations with respect to each of the following: [¶] (1) The present and planned land uses in the area, including agricultural and open-space lands. [¶] (2) The present and probable need for public facilities and services in the area. [¶] (3) The present capacity of public facilities and adequacy of public services that the agency provides or is authorized to provide. [¶] (4) The existence of any social or economic communities of interest in the area if the commission determines that they are relevant to the agency." (Italics added.)

[11] Section 56430 provides in part: "(a) In order to prepare and to update spheres of influence in accordance with Section 56425, the commission shall conduct a service review of the municipal services provided in the county or other appropriate area designated by the commission. The commission shall include in the area designated for service review the county, the region, the subregion, or any other geographic area as is appropriate for an analysis of the service or services to be reviewed, and shall prepare a written statement of its determinations with respect to each of the following: [¶] (1) Infrastructure needs or deficiencies. [¶] (2) Growth and population projections for the affected area. [¶] (3) Financing constraints and opportunities. [¶] (4) Cost avoidance opportunities. [¶] (5) Opportunities for rate restructuring. [¶] (6) Opportunities for shared facilities. [¶] (7) Government structure options, including advantages and disadvantages of consolidation or reorganization of service providers. [¶] (8) Evaluation of management efficiencies. [¶] (9) Local accountability and governance. [¶] (b) In conducting a service review, the commission shall comprehensively review all of the agencies that provide the identified service or services within the designated geographic area. [¶] (c) The commission shall conduct a service review before, or in conjunction with, but no later than the time it is considering an action to establish a sphere of influence in accordance with Section 56425 or Section 56426.5 or to update a sphere of influence pursuant to Section 56425."

organization. (§ 56668, subd. (h).) Determinations about changes of organization shall be consistent with the spheres of influence of the local agencies affected. (§ 56375.5.)[12]

B. *Analysis*

■ As indicated, Placer LAFCO says the issue is whether Placer LAFCO or Nevada LAFCO should set the sphere of influence and conduct the service reviews for a multicounty district insofar as it affects Placer County. We shall conclude, as did the trial court, that the Act (§ 56387) gives the principal county (here, Nevada LAFCO) jurisdiction over spheres of influence and service reviews of multicounty districts within neighboring counties, and this conclusion does not conflict with section 56066, which defines principal county with reference to changes of organization.

■ Placer LAFCO admits Nevada LAFCO, as the "principal county" (§ 56066, fn. 4, *ante*) with respect to TSD, would have jurisdiction over *changes of organization* such as an annexation to TSD affecting Placer County. Placer LAFCO's position is that a "principal county" has jurisdiction *only* over "changes of organization" affecting other counties, *not* over "spheres of influence" or "service reviews" in the other counties, because section 56066 defines "principal county" with reference to districts "for which a change of organization or reorganization is proposed." We shall reject this argument and conclude sections 56066 (defining principal county with reference to taxable property within a district for which a change of organization is proposed) and 56387 (giving principal counties jurisdiction over authorized matters that include matters other than changes of organization) can be read together harmoniously. "A court does not determine the meaning of a statute from a single word or sentence but in context; provisions relating to the same subject must be harmonized to the extent possible. [Citations.]" (*People v. Anderson* (2002) 28 Cal.4th 767, 776 [122 Cal.Rptr.2d 587, 50 P.3d 368].) ·

As indicated, "change of organization" means a city incorporation/disincorporation; a district formation/dissolution; an annexation to, or detachment from, a city or district; a consolidation of cities or special districts; or a merger or establishment of a subsidiary district. (§ 56021.)

In contrast to "change of organization," a sphere of influence is "a plan for the probable physical boundaries and service area of a local agency."

---

[12] Section 56375.5 provides: "Every determination made by a commission regarding the matters provided for by subdivisions (a), (m), and (n) of Section 56375 [approval/disapproval of changes of organization and waiver of restrictions] and by subdivision (a) of Section 56375.3 [annexation of islands] shall be consistent with the spheres of influence of the local agencies affected by those determinations."

(§ 56076, fn. 2, *ante*; see also § 56425 [determination of sphere of influence].) "A sphere of influence is a flexible planning and study tool to be reviewed and amended periodically as appropriate." (*City of Agoura Hills v. Local Agency Formation Com., supra*, 198 Cal.App.3d at p. 490; see also, § 56425, subds. (f), (g) [sphere of influence should be reviewed and updated as necessary every five years].) The sphere of influence is a factor to be considered in reviewing proposals for changes of organization. (§ 56668, subd. (h).) However, determinations regarding approval or disapproval of changes of organization shall be consistent with the spheres of influence of the local agencies affected by those determinations. (§ 56375.5, fn. 12, *ante*.)

"Service reviews" are conducted in order to prepare and update spheres of influence. (§ 56430.)

■ Where a district provides services to multiple counties (a multicounty district), the sphere of influence and service review will necessarily implicate multiple counties. As we shall see, nothing in the Act calls for each county in a multicounty district to set its own sphere of influence for that district.

Contrary to Placer LAFCO's position, the Act goes beyond changes of organization and gives principal counties exclusive jurisdiction over spheres of influence and service reviews of a multicounty district within other counties serviced by the district. Thus, as indicated, section 56387 provides, "Except as otherwise provided in Section 56388,[13] if any district *is*, or as a result of a proposed change of organization or reorganization would be, located in more than one county, the commission of the principal county shall have exclusive jurisdiction over the matters authorized and required by this part." (Italics added.) "This part" is part 2—Local Agency Formation Commission, sections 56300 to 56434—and includes the determination of spheres of influence (§ 56425, fn. 10, *ante*) and the conduct of service reviews (§ 56430, fn. 11, *ante*).

Thus, section 56387 unambiguously gives principal counties jurisdiction over spheres of influence and service reviews of multicounty districts.

Placer LAFCO argues the phrase "matters authorized and required by this part," as used in section 56387, does not apply to spheres of influence or

---

[13] Section 56388 provides: "If any proposal involves a district which is, or as a result of a proposed change of organization or reorganization would be, located in more than one county, exclusive jurisdiction for that proposal over the matters authorized and required by this part may be vested in the commission of a county, other than the principal county, in which territory of the district is located or is proposed to be located if all of the following occur: [¶] (a) The commission of the principal county agrees to having the exclusive jurisdiction vested in the commission of another county. [¶] (b) The commission of the principal county designates the commission of another county which shall assume exclusive jurisdiction. [¶] (c) The commission of the county so designated agrees to assume exclusive jurisdiction."

service reviews but refers only to things such as notices, proceedings, and orders, because a different provision of the Act (§ 56123)[14] uses the "authorized and required" language in connection with notices, proceedings, and orders. Nothing in the language of section 56387 sanctions this view, and we reject it.

Placer LAFCO argues section 56387 cannot give principal counties jurisdiction over spheres of influence and service reviews, because section 56066 (fn. 4, *ante*), defines principal counties as counties having most of the assessed value of taxable property within "a district or districts *for which a change of organization or reorganization is proposed.*" (Italics added.) Placer LAFCO argues section 56066 thus limits principal counties' jurisdiction to matters concerning changes of organization or reorganization. In the same vein, Northstar characterizes section 56066 as establishing a "condition precedent" to the definition of principal county. We disagree.

Thus, section 56066 is a definitional statute that defines "principal county." A definitional statute will not operate to abrogate another provision of the Act, because section 56010 says the statutory definitions govern "[u]nless the provision or context otherwise requires . . . ." We believe section 56066 (which defines principal county with reference to changes of organization) and section 56387 (which gives principal counties jurisdiction over authorized matters) can be harmonized.

Thus, change of organization is what the Act is all about. It is why *all* LAFCO's exist, whether or not they are the LAFCO's of principal counties. Additionally, it is obvious that a "change of organization" is a prerequisite for a "principal county" to come into being, because in order for a principal county to exist, there must be a multicounty "district," and formation of a district constitutes a "change of organization" (§ 56021.) Once the principal county comes into being, we see no impediment to the Legislature giving the principal county jurisdiction over additional matters beyond changes of organization—matters such as sphere of influence and service reviews. We note a different statute expressly gives principal counties jurisdiction over proposed changes of organization (§ 56123, fn. 14, *ante*), and therefore principal counties do not depend on the definitional statute of section 56066 as the source of their jurisdiction over changes of organization.

---

[14] Section 56123 provides: "Except as otherwise provided in Section 56124 [transfer of jurisdiction by agreement], if a proposed change of organization or a reorganization applies to two or more affected counties, for the purpose of this division, exclusive jurisdiction shall be vested in the commission of the principal county. Any notices, proceedings, orders, or any other acts *authorized or required* to be given, taken, or made by the commission, board of supervisors, clerk of a county, or any other county official, shall be given, taken, or made by the persons holding those offices in the principal county." (Italics added.)

Thus, principal counties unambiguously have jurisdiction over spheres of influence and service reviews pursuant to section 56387.

Placer LAFCO argues this reading of section 56387 must be wrong, because section 56387 gives jurisdiction to the principal county "[e]xcept as otherwise provided in Section 56388," and section 56388 (fn. 13, *ante*) limits itself to a "proposal," which is defined in the Act as a request for a change of organization (§ 56069).[15] Placer LAFCO argues that, since section 56388 is limited to changes of organization, section 56387 must also be so limited. Placer LAFCO argues the trial court erroneously construed section 56388 as allowing transfer of jurisdiction for any matter, not just for changes of organization. Nevada County also questions the ruling on this point and states there is nothing that requires sections 56387 and 56388 to have the same scope.

■ We need not decide the meaning of section 56388, because that statute is not at issue in this case. Placer LAFCO seeks to use section 56388 to limit the scope of section 56387, arguing (without citation of authority) that the two statutes must have the same scope. However, even assuming for the sake of argument that Placer LAFCO's interpretation of section 56388 is correct (that section 56388 allows transfer of jurisdiction only with respect to changes of organization), we see nothing wrong with one statute conferring jurisdiction over multiple matters and another statute authorizing transfer of jurisdiction over some but not all of those matters. Indeed, we agree with Nevada LAFCO that Placer LAFCO's position (that any limitation in section 56388 must be imported into section 56387) would operate as a partial repeal of section 56387. There is a presumption against such repeals by implication. (*Sacramento Newspaper Guild v. Sacramento County Bd. of Suprs.* (1968) 263 Cal.App.2d 41, 54 [69 Cal.Rptr. 480].)

We conclude section 56387 gives principal counties jurisdiction over spheres of influence and service reviews of multicounty districts within neighboring counties.

We reject other miscellaneous attacks on this construction of the Act.

Thus, Placer LAFCO argues the overall objectives of the Act are to discourage urban sprawl and provide for orderly development of service agencies, and a local LAFCO is best able to determine the pattern of growth within its own county. However, having a neighboring county (as opposed to the state) determine a sphere of influence for a multicounty district does keep

---

[15] Section 56069 provides: " 'Proposal' means a request or statement of intention made by petition or by resolution of application of a legislative body . . . proposing proceedings for the change of organization or reorganization described in the request or statement of intention."

the matter local, and having one county determine the sphere of influence for a multicounty district (as opposed to multiple counties within the district each determining their own sphere of influence for the district) is consistent with the objectives of planned growth and discouragement of urban sprawl.

Placer LAFCO argues that, because section 56425 (fn. 10, *ante*) says the commission shall determine the sphere of influence of each local agency "within the county" to provide for needs "of the county," this statute does not authorize principal counties to set spheres of influence in adjacent counties. However, section 56387 *does* so authorize, as we have seen. We disagree with Placer LAFCO's view of section 56425 as mandating control by the local county rather than the principal county.

Placer LAFCO argues the responsibility to assure orderly growth lies with the LAFCO in the county where the development will occur, and if several different LAFCO's are responsible for preparing spheres of influence for various agencies within a county, the spheres of the various agencies with the potential to serve an area may conflict and the efficiency declared in the statute will give way to jurisdictional fights and conflicts. However, a similar defect could be identified in Placer LAFCO's position, i.e., if each county LAFCO in a multicounty district determines its own sphere of influence for its own little corner of that district, the spheres of the various counties within a single district may conflict.

Placer LAFCO argues an example of a potential conflict is shown by this case, as follows: Northstar lies entirely within Placer County and provides a range of services—wastewater collection, fire protection, emergency services, potable water, snow removal, road maintenance, street lighting, and solid waste disposal. TSD provides a single service—wastewater collection—within both Placer County and Nevada County. TSD's current sphere of influence was adopted by Nevada LAFCO. There is presently no conflict between TSD's sphere as adopted by Nevada LAFCO and Northstar's sphere as adopted by Placer LAFCO. However, in July 2002, TSD approved a "Placer County Sphere of Influence 2020," proposed to expand its sphere in Placer County to include land that overlays a substantial portion of Northstar's existing sphere. Placer LAFCO argues that, if Nevada LAFCO has exclusive authority to determine TSD's sphere within Placer County, then Placer LAFCO would have no role in determining whether there is a need for TSD to provide services to an area within the existing sphere of Northstar. Once the sphere is established, any request to annex territory is made directly to Nevada LAFCO, and Placer LAFCO would have no authority to determine whether it is appropriate for the territory to be served by TSD or Northstar. Placer LAFCO complains it and local planning agencies will have no participation in decisions affecting them. Placer LAFCO says that, under its

proposal, principal counties will continue to retain jurisdiction over annexations to a multicounty district that occur in an adjacent county, but the appropriateness of that annexation and its impact on service and development issues in Placer County already will have been considered by Placer County. Placer LAFCO argues that if principal counties have jurisdiction over spheres of influence in neighboring counties, then a LAFCO would have the authority to extend the boundaries of a district that is located solely within the boundaries of that county into an adjacent county, claim principal county status, and set a sphere for such district that conflicts with the planning and community attitudes of the adjacent county, a scenario in direct conflict with the express wording and purpose of the Act.

■ Nevada LAFCO responds overlapping spheres would not be the end of the world, but in any event, Placer LAFCO's arguments are an exaggeration, because the Act has safeguards to insure input of each local county. For example, before adoption or revision of a sphere of influence, a public hearing must be held, and each affected county and local agency must receive notice of the hearing and an opportunity to be heard. (§ 56427.)[16] Additionally, contrary to Placer LAFCO's unsupported suggestion that commissioners are local officials accountable only to residents of that county, section 56325.1 directs commissioners to "exercise their independent judgment on behalf of the interests of residents, property owners, and the public as a whole" and "represent the interests of the public as a whole and not solely the interests of the appointing authority." The Act also has safeguards against arbitrary action by a "foreign" LAFCO with respect to decisions on changes of organization, because dissatisfied citizens can force the matter to a vote and override the decision. (§§ 57075, 57176.)

As an example of potential conflict, Placer LAFCO hypothesizes that it and all of its five neighboring counties are principal counties to multicounty districts that provide a variety of services in these counties and asks questions such as: Do six different LAFCO's have exclusive jurisdiction to determine potentially conflicting spheres of influence for agencies serving one county; and could a small county's larger neighbors allow the expansion of multicounty

---

[16] Section 56427 says, "The commission shall adopt, amend, or revise spheres of influence after a public hearing called and held for that purpose. At least 21 days prior to the date of that hearing, the executive officer shall give mailed notice of the hearing to *each affected local agency or affected county* . . . . [¶] At any hearing called and held pursuant to this section, the commission shall hear and consider oral or written testimony presented by *any affected local agency or affected county* . . . ." (Italics added.) "Affected county" means "each county which contains, or would contain, any territory for which a change of organization or reorganization is proposed or ordered or which contains all or any part of a district for which a change of organization or reorganization is proposed or ordered with respect to territory outside that county." (§ 56012.)

districts into the smaller county over the smaller county's objection? However, the last question is disingenuous, because it involves expansion, which is a "change of organization," and Placer LAFCO does not dispute that the principal county LAFCO has exclusive jurisdiction over changes of organization. Thus, as conceded by Placer LAFCO, different LAFCO's may be responsible for *changes of organization* within a county under the Act, because Placer LAFCO has jurisdiction for changes in districts covering only Placer County, while whatever county is the "principal county" has jurisdiction for changes in multicounty districts that include but are not limited to Placer County. As to potentially conflicting spheres of influence, Placer LAFCO's position that a single multicounty district should have multiple simultaneous spheres of influence also creates a potential for conflicts.

Thus, Placer LAFCO fails to prove its assertion that: "As long as each LAFCo is held to retain the jurisdiction to establish spheres of influence affecting territory within its own county, there can be no conflict."

To the contrary, Nevada LAFCO does identify potential conflicts that might arise from Placer LAFCO's position. Thus, Nevada LAFCO argues Placer LAFCO's interpretation of the Act would split responsibility for the planning process (spheres of influence and service reviews) from the day-to-day decisionmaking. It would have the LAFCO of each affected county adopting a service review and sphere of influence plan for each multicounty district within the county. Then the principal county LAFCO would have to use the affected county's sphere plan and service review to base its decisions within the affected county. Nevada LAFCO says this might not present a problem if the planning documents were simple and uniform, but that is not the case. The Legislature has not enacted a uniform planning process, and each LAFCO adopts its own policies and procedures. (E.g., § 56300, subd. (a) [each commission shall establish written policies and procedures].) Thus, Nevada LAFCO will follow its own policies even if it were to use Placer LAFCO's sphere plans and service reviews. Sphere plans and service reviews may vary from LAFCO to LAFCO. Nevada County directs our attention to the written policies of Placer LAFCO and Nevada LAFCO, submitted to this court by a "[s]tipulation to [a]ugment [r]ecord," which we granted. Nevada LAFCO's policies include six pages of requirements for spheres of influence. Placer LAFCO's policies include only a page and a half on spheres of influence. Since decisions with respect to changes of organization must be consistent with spheres of influence, Nevada LAFCO as principal county with exclusive jurisdiction over changes of organization may find itself required to base its decision on information that Placer LAFCO did not require or include in its sphere plan.

Nevada LAFCO also argues Placer LAFCO's position balkanizes the planning process between counties, because there would be a separate sphere

of influence and service review in each county in which a multicounty district provided service, potentially subjecting the principal county LAFCO to varying requirements for each LAFCO. Nevada LAFCO further argues such balkanization would discourage analysis of issues on a regional basis. Nevada LAFCO cites as an example the Truckee-Martis Valley area, but Nevada LAFCO gives no citation to anything in the record to support its factual assertions about this area (and respondents cite only to the statement of decision, which cited a trial brief), and we therefore will not consider it as a factual matter. We can, however, consider the point as a hypothetical in which integrated facilities of a multicounty district serve an area that is essentially a single community but that crosses a county line. Each county's LAFCO could decide, based on a limited study of that county only, that there is adequate capacity to double. the service demands for that county. Neither county LAFCO would have considered the combined impact of their decisions, and it could result in overtaxing the system's capacity.

Thus, Placer LAFCO's theory of the case will not result in an absence of conflicts.

■ Placer LAFCO argues the considerations that go into determining spheres of influence, as required by section 56425, subdivision (e) (fn. 10, *ante*), e.g., planned land uses in the area, need for services, etc., are the types of considerations that can only be made by a local LAFCO, not a neighboring principal county LAFCO. The subdivision refers to matters such as present and planned land uses, need for and present capacity of public facilities, and existence of any social or economic communities of interest in the area if determined relevant by the commission. Placer LAFCO fails to show why these determinations can be made *only* by the local LAFCO. We need not address points in appellate briefs that are unsupported by adequate factual or legal analysis. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 [79 Cal.Rptr.2d 273]; *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [21 Cal.Rptr.2d 834]; *In re Marriage of Nichols* (1994) 27 Cal.App.4th 661, 672–673, fn. 3 [33 Cal.Rptr.2d 13].)

Placer LAFCO cites section 56301, which in describing the purposes of "a commission" says, "One of the objects of the commission is to make studies and to obtain and furnish information which will contribute to the logical and reasonable development of local agencies in each county and to shape the development of local agencies so as to advantageously provide for the present and future needs of each county and its communities." We disagree that this statute preserves jurisdiction in Placer LAFCO over multicounty districts for which Placer LAFCO is not the principal county. This statute, which describes the objects of "the commission" applies equally to Nevada LAFCO, which is also a "commission."

Placer LAFCO argues the statutory definition of "principal county" in section 56066 was amended in 1994 to add the language about changes of organization, *after* enactment of section 56387. However, Placer LAFCO fails to support this point with adequate authority, instead referring us to an entire trial brief of another party. We need not address this unsupported and undeveloped argument, and it is improper simply to incorporate by reference papers filed in the trial court. (*Badie v. Bank of America, supra,* 67 Cal.App.4th at pp. 784–785; *Kim v. Sumitomo Bank, supra,* 17 Cal.App.4th at p. 979; *In re Marriage of Nichols, supra,* 27 Cal.App.4th at pp. 672–673, fn. 3; *Garrick Dev. Co. v. Hayward Unified School Dist.* (1992) 3 Cal.App.4th 320, 334 [4 Cal.Rptr.2d 897].) Additionally, we observe that even before 1994, section 56066 contained the language about changes of organization. (Stats. 1985, ch. 541, § 3, pp. 1928–1929.) This observation illustrates the importance of the requirement that appellate briefs provide an adequate factual and legal analysis.

Placer LAFCO argues that, because there is a statutory definition for "affected county" as a county with territory for which a change of organization is proposed (§ 56012), and this definition corresponds with the "principal county" definition, and there is no statutory definition for a LAFCO which establishes a sphere of influence in another county, then "principal county" must be restricted to situations involving a change of organization. We disagree.

Under a separate heading about "service reviews," Placer LAFCO argues in its opening brief that the trial court erroneously determined that a principal county LAFCO was vested with exclusive authority to conduct service reviews for multicounty districts.[17]

Placer LAFCO cites section 56430, which provides in part that "the commission shall conduct a service review of the municipal services provided *in the county or other appropriate area designated by the commission.*" (Italics added.) We reject the argument that this language means only Placer LAFCO can conduct a service review of services in Placer County.

Placer LAFCO claims the question of whether principal counties have exclusive jurisdiction over service reviews was considered and rejected by the Office of Planning and Research (OPR) in the Local Agency Formation Commission Municipal Service Review Guidelines and Appendices (OPR

---

[17] Placer LAFCO's reply brief says, "Neighboring counties such as Nevada County may be an appropriate entity to prepare [municipal service reviews] in Placer County under . . . Section 56430 [fn. omitted], but they do not and cannot have exclusive jurisdiction to prepare [municipal service reviews]." Placer LAFCO thus concedes the Act gives Nevada LAFCO authority to prepare service reviews in Placer County in connection with TSD.

Guidelines). These guidelines were statutorily mandated. (§ 56430, subd. (d) [OPR, "in consultation with commissions, the California Association of Local Agency Formation Commissions, and other local governments, shall prepare guidelines for the service reviews to be conducted by commissions pursuant to this section"].)

Placer LAFCO cites authority that courts generally give deference to administrative interpretation of statutes of administrative agencies charged with carrying out the statutes. (E.g., *MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 219 [130 Cal.Rptr.2d 564].)

Placer LAFCO cites from the OPR Guidelines, appendix M as follows:

"D. Determining the Lead LAFCO

"If LAFCOs decide to proceed with a joint review, or agreement to conduct a joint review, they will need to determine which LAFCO should lead the municipal service review. [The Act] (§ 56066 and § 56388) currently contains guidance for determining which LAFCO should assume the principal role *for an organization or reorganization. While this section does not specifically apply to municipal service reviews, it does include guidance for determining which LAFCO could serve as the Lead LAFCO for a municipal service review.*

"[Section] 56066 defines the term, 'Principal County,' as 'the county having all or the greatest portion of the entire assessed value . . . of all taxable property within a district or districts for which a change of organization or reorganization is proposed.'

"[The Act] also provides a means for delegating the lead role when a change of organization or reorganization is proposed. [Section] 56388 provides that the commission of the principal county can vest jurisdiction in another LAFCO subject to the agreement of the LAFCO assuming jurisdiction. For municipal service reviews, LAFCOs may choose their own options based on experience, desire to lead or other factors. Options for determining roles should be included in the joint powers agreement where applicable." (Italics added.)

Placer LAFCO argues these OPR Guidelines conclude that exclusive jurisdiction is not granted to a principal county to conduct service reviews even though section 56430 is included in part 2 of the Act. However, the cited OPR Guidelines make no reference to part 2. As noted by Nevada LAFCO, the portion of the OPR Guidelines relied upon by Placer LAFCO relates to the delegation of the lead agency role where LAFCOs have determined to proceed

with a joint review. This guidance by the OPR does not consider or reject the plain meaning of the Act where LAFCOs have not determined to conduct a joint review or otherwise agreed to delegate jurisdiction to the affected county LAFCO.

Both sides argue, but fail to prove, that their position is supported by the legislative intent of the Act, as expressed in a Report of the Commission on Local Governance for the 21st Century. The current Act was "intended to implement the recommendations of the Commission on Local Governance for the 21st Century . . . ." (Stats. 2000, ch. 761, § 286.) These recommendations appear, along with historical background, in Growth Within Bounds: Planning California Governance For The 21st Century (Growth Within Bounds), which was published in January 2000 as a Report of the Commission on Local Governance for the 21st Century. The parties agree this report provides the best evidence of legislative intent of the Act (though neither side points to anything directly addressing the issue in this appeal).

LAFCO's were created in 1963 to review and approve or disapprove proposals for incorporation, creation of special districts, and annexations. In 1965, these statutes, with technical changes, were redesignated the Knox-Nisbet Act, and a separate district reorganization act (DRA) was passed, establishing the procedure for change of organization of special districts. Under the DRA, LAFCO was nevertheless authorized to review and approve or disapprove of these proposals. In 1977, the Municipal Organization Act (MORGA) was adopted, consolidating procedures governing annexation, detachment, incorporation, disincorporation, and consolidation of cities into one Act. MORGA declared the state policy of orderly growth and the finding that a single government agency is better able to respond to community service needs. In 1985, the Knox-Nisbet Act, DRA, and MORGA were consolidated into the Cortese-Knox Local Government Reorganization Act of 1985. Legislation in 1993 authorized LAFCO's to initiate proposals for the consolidation of special districts or formation/dissolution of subsidiary districts. Growth Within Bounds noted other changes but concluded the basic powers and duties of a LAFCO had changed little since the original enabling legislation in 1963.

Regarding multicounty districts, Growth Within Bounds said in part: "The Cortese-Knox Act envisions the existence of multi-county districts and makes provision for decision-making precedence. Each special district has a designated 'principal county' of service. The principal county is defined in [§ 56066[18]] as the county having all or the greater portion of the entire assessed value of all taxable property within the district. Moreover, the

---

[18] Current section 56066, with its "change of organization" language (fn. 4, *ante*), reads the same now as it did at the time Growth Within Bounds was written.

LAFCO for the principal county has exclusive jurisdiction over any proposed change of organization or reorganization involving the district, even if the change affects only the portion of the district located in another county." The Commission on Local Governance recommended statutory amendments (1) to give express authorization for LAFCO's to enter agreements with neighboring LAFCO's concerning multicounty districts, and (2) to give notice of proposed changes to all affected jurisdictions.

We disagree with Placer LAFCO's construction of the foregoing quotation from the Report as a statement that principal county jurisdiction is *limited* to changes of organization. Rather, the Report's reference to "decision-making precedence" appears to place responsibility for spheres of influence and service reviews in the "principal county."

Growth Within Bounds also discussed spheres of influence and service reviews, without directly addressing them in the context of principal counties, but referring to a "regional" approach, e.g., "A service review would encompass a comprehensive study of each identifiable public service provided by counties, special districts, and cities in the region." Spheres of influence were added by legislation in 1971 but were not routinely performed until 1984 legislation set a mandatory deadline.

We disagree with Placer LAFCO's position that the report's failure to discuss expressly principal county jurisdiction over spheres of influence means there is no such jurisdiction.

Placer LAFCO argues there is an inconsistency in the judgment because the trial court said that, despite Nevada LAFCO's "exclusive jurisdiction" to conduct the service review, Placer LAFCO retained jurisdiction to conduct its own service reviews for services within its borders, which may of necessity include a review of the service capabilities of multicounty districts that operate partly within Placer County borders. The trial court said the principal county's exclusive jurisdiction extended to service reviews of its multicounty districts for the purposes of exercising exclusive jurisdiction over spheres of influence, while the local LAFCO retained jurisdiction potentially to establish spheres of influence that overlap the multicounty district's sphere of influence. We see no problem with the judgment. We see nothing wrong with Placer County studying or reviewing services within its borders. Its reviews simply do not constitute the "service reviews" that will be used to establish and update spheres of influence under the Act for multicounty districts for which Placer County is not the principal county. We therefore need not further address the parties' arguments on this point.

We conclude Placer LAFCO and Northstar have failed to show grounds for reversal of the judgment.

## DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal.[19] (Cal. Rules of Court, rule 27(a)(4).)

Davis, J., and Hull, J., concurred.

---

[19] The judgment says the parties agreed to bear their own costs. We assume this applies to the appeal.