[No. C058502. Third Dist. Mar. 25, 2009.]

HOFMAN RANCH et al., Plaintiffs and Appellants, v.
YUBA COUNTY LOCAL AGENCY FORMATION COMMISSION et al.,
Defendants and Respondents.

**COUNSEL**

Boutin Gibson Di Giusto Hodell, Michael E. Chase; Thomas W. Eres; and John C. Gabrielli for Plaintiffs and Appellants.

Law Offices of P. Scott Browne, P. Scott Browne and Marsha A. Burch for Defendants and Respondents.

OPINION

**ROBIE, J.**—The Ralph M. Brown Act (Brown Act) (Gov. Code,[1] § 54950.5 et seq.) requires "[a]ll meetings of the legislative body of a local agency [to] be open and public . . . except as otherwise provided in this chapter." (§ 54953, subd. (a).) The chapter provides for closed sessions "to consider the . . . evaluation of performance . . . of a public employee." (§ 54957, subd. (b)(1).) In this context, "employee" includes "an officer or an independent contractor who functions as an officer or an employee but [does] not include any elected official, member of a legislative body or other independent contractors." (*Id.,* subd. (b)(4).)

In this case, the Yuba County Local Agency Formation Commission (Yuba LAFCO) and its five commissioners (collectively defendants) held a closed session to evaluate the performance of John Benoit, with whom Yuba LAFCO contracted to provide "executive officer services." Frances Hofman, a member of the public, who is one of the plaintiffs here, unsuccessfully objected to the closed session. After the closed session, the commissioners publically voted to extend Benoit's contract by one year.

In response, Frances Hofman, her partner in a family trust, Emma Hofman, and Hofman Ranch (collectively the Hofman plaintiffs) filed a petition for writ of mandate to "enforce" the Brown Act. They requested setting aside all action taken in the closed session and enjoining all future closed session evaluations of "independent contractors" such as Benoit. The trial court denied the petition, and the Hofman plaintiffs appeal.

The dispositive question on appeal is whether defendants violated the Brown Act by conducting a closed session evaluation of Benoit. The answer turns on whether Benoit was Yuba LAFCO's executive officer. Finding he was, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 11, 2006, Yuba LAFCO "[a]ccepted the proposal" of Benoit for a "[p]ublic [e]mployee [a]ppointment" as the "[e]xecutive [o]fficer." The proposal was memorialized in an agreement for "[e]xecutive [o]fficer services" between Yuba LAFCO and Benoit, who was identified as "contractor."

Attachment A to the agreement defined Benoit's duties as follows: (a) "[p]rocess applications for city and district changes of organization"; (b) "[w]ork with the cities, districts, Yuba County, developers, and members

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

of the public on LAFCO related issues"; (c) "[p]repare notices, agendas, filings, minutes, agreements, and reports consistent with the requirements of the Cortese-Knox-Hertzberg Local Government Reorganization Act of 2000 [(§ 56000 et seq.)]"; (d) "[f]acilitate workshops and attend meetings as needed to address community concerns"; (e) "[p]repare Municipal Service Reviews and Sphere of Influence updates"; (f) "[p]repare the necessary CEQA documents"; (g) [p]repare and manage LAFCO's budget; (h) "[r]eview local projects of concern and prepare response for the Commission"; (i) "[s]upervise support staff and coordinate with counsel"; (j) "[r]epresent Yuba County LAFCO at CALAFCO"; (k) "[m]ake provisions for a presence in Yuba County"; and (l) "[o]ther duties as assigned or directed by the Commission."

Attachment D of the agreement specified the "general provisions" as including the following: "All acts of CONTRACTOR shall be performed as an independent contractor and not as an agent, officer or employee of LAFCO" and "CONTRACTOR is not subject to the direction and control of LAFCO except as to the final result contracted for under this Agreement."

The minutes for Yuba LAFCO's meetings reflect that Benoit performed the following functions from February 8, 2006, to June 14, 2006: he attended all Yuba LAFCO meetings, where he was identified as the executive officer; he prepared the minutes of those meetings and kept track of meeting dates; he answered questions from the public and the commission during Yuba LAFCO meetings; he presented and made recommendations on requests for waivers of filing fees regarding annexations; he kept track of written protests for annexations; he prepared and presented staff reports to the commissioners containing recommendations on adopting resolutions dealing with sphere of influence amendments and subdivision annexations; he presented to the commissioners amendments to resolutions; he educated the commissioners about special districts; he reviewed resolutions to adopt guidelines for municipal service reviews and spheres of influence; he was responsible for negotiating with the City of Marysville for the city's portion of the Yuba LAFCO budget; he presented a staff report recommending the commission approve a resolution adopting the draft budget and answered questions from the commissioners about it; and he requested authorization for staff to attend the CALAFCO conference (California Association of Local Agency Formation Commissions) and CEQA workshop (California Environmental Quality Act; Pub. Resources Code, § 21000 et seq.).

Correspondence between Benoit and local government agencies between February 2006 and April 2006 reflects that Benoit performed the following functions: he notified local governmental agencies when their applications for

amendments and annexations had been received and whether those applications were incomplete; he received notices from local governmental agencies regarding sphere of influence annexation maps; he published notices of hearing for proposed sphere of influence amendments; he coordinated with Yuba LAFCO counsel for receipt of necessary documents for annexation projects; he made recommendations to Yuba LAFCO regarding approving amendments to the sphere of influence for certain cities; and he prepared CEQA compliance documents.

On June 14, 2006, Yuba LAFCO held a regular meeting attended by the commissioners, Benoit, and members of the public. Over objection from Frances Hofman, the commissioners "entered into closed session" for one and one-half hours to conduct "an evaluation of the Executive Officer." After the closed session, the commissioners publically voted to extend Benoit's contract by one year.

In response, the Hofman plaintiffs filed a petition for writ of mandate to "enforce" the Brown Act, contending defendants "violated the Brown Act by going into closed session at a public hearing to evaluate the performance of an independent contractor . . . ." The Hofman plaintiffs sought to "set aside LAFCO's closed session action[2] and to enjoin future similar violations of the Brown Act."

The trial court denied the petition, finding that Benoit was functioning as the LAFCO executive officer "notwithstanding the provisions of the agreement" and "therefore, the evaluation of his performance was properly conducted in closed session."

On appeal, the Hofman plaintiffs contend the trial court erred in finding that Benoit could function as an officer and there was "no evidence of legal significance" that Benoit was functioning as Yuba LAFCO's executive officer. Finding Benoit was Yuba LAFCO's executive officer, we affirm the judgment.

DISCUSSION

I

*Standard of Review*

The parties disagree about the standard of review. The Hofman plaintiffs claim it is de novo, because this is a Brown Act case. Defendants contend it

---

[2] This part of the request is inexplicable because the commissioners' vote on whether to extend Benoit's contract another year was conducted in public. Only Benoit's performance evaluation was conducted in closed session.

is abuse of discretion because this is a mandamus action. The Hofman plaintiffs are correct, albeit for a different reason.

LAFCO decisions generally are reviewed under a substantial evidence standard. (*Placer County Local Agency Formation Com. v. Nevada County Local Agency Formation Com.* (2006) 135 Cal.App.4th 793, 803 [37 Cal.Rptr.3d 729].) However, because this case presents only questions of law on appeal, i.e., whether Benoit was Yuba LAFCO's executive officer, our review is de novo. (*Ibid.*)

II

*Benoit Was Yuba LAFCO's Executive Officer*

■ Each county is required to have a local agency formation commission, commonly referred to as LAFCO. (§ 56325; *City of Ceres v. City of Modesto* (1969) 274 Cal.App.2d 545, 550 [79 Cal.Rptr. 168].) " 'The overarching goal of LAFCOs is to encourage the orderly formation and extension of government agencies, while balancing the competing needs in California for affordable housing, economic opportunities, and the preservation of natural resources.' " (*Placer County Local Agency Formation Com. v. Nevada County Local Agency Formation Com., supra,* 135 Cal.App.4th at p. 798, quoting Curtin & Talbert, Curtin's Cal. Land Use and Planning Law (24th ed. 2004) pp. 381–382.)

■ To "conduct and perform the day-to-day business of the [LAFCO]," a LAFCO must "appoint an executive officer." (§ 56384, subd. (a).) While the phrase "day-to-day business of the [LAFCO]" is not defined, its meaning is illustrated by statutory examples of the duties performed by the executive officer. Those duties include assisting with preparation of reports (§ 56386); receiving applications from petitioners or legislative bodies wanting to initiate proceedings for a change of organization or a reorganization (§§ 56658, subd. (a), 56650); mailing notices (§ 56658, subd. (b)(1)); determining whether an application is complete and acceptable for filing (*id.,* subd. (d)); transmitting to applicants determinations of incomplete applications (*id.,* subd. (h)); issuing certificates of filing when applications are accepted for filing (*id.,* subd. (g)); and setting proposals for hearing and publishing notice of those hearings (*id.,* subd. (i)).

In light of these examples, the simple question here is whether Benoit was "conduct[ing] and perform[ing] the day-to-day business of the [LAFCO]."

(§ 56384, subd. (a).) If he was, then Benoit was Yuba LAFCO's executive officer and his evaluation in closed session was proper.

To answer this question, we start with the duties Benoit was assigned in the agreement. These included processing LAFCO-related applications; preparing CEQA- and LAFCO-related reports and documents; reviewing projects of concern and preparing responses for Yuba LAFCO; working with various entities and the public on LAFCO-related issues; preparing and managing Yuba LAFCO's budget; supervising support staff and coordinating with counsel; representing Yuba LAFCO at CALAFCO; and making provisions for a presence in Yuba County. Notably, at least some these duties encompassed those assigned to the executive officer by statute, including assisting with preparation of reports, receiving and processing LAFCO-related applications, mailing notices, setting proposals for hearing, and publishing notice of those hearings.

The record demonstrates Benoit performed these duties and more: he received applications for amendments and annexations; he notified agencies when their applications were received and when their applications were incomplete; he published notices and kept track of meeting dates; he presented and made recommendations to the commissioners on issues relating to annexation; he prepared and presented LAFCO-related reports; he attended all Yuba LAFCO meetings and prepared the minutes of those meetings; he explained to the commissioners issues relating to the draft budget and reviewed and discussed with them proposed financial policies; he requested authorization for staff to attend the CALAFCO conference and CEQA workshop; and he educated the public about Yuba LAFCO. Taken together, these duties assigned to Benoit by agreement and his conduct in fulfilling them satisfy the requirement that he performed the "the day-to-day business of the [LAFCO]." (§ 56384, subd. (a).) As such, he was Yuba LAFCO's executive officer and, as an "officer" (§ 54957, subd. (b)(4)), his performance evaluation in closed session was proper. (*Id.*, subd. (b)(1).)

In response to this evidence, the Hofman plaintiffs make what amount to two arguments: one, Benoit was not the executive officer because Yuba LAFCO could not "exercise control over his performance"; and two, the evidence we have cited "lacks substantiality." We reject both arguments.

The first argument relies on an opinion of the California Attorney General the Hofman plaintiffs claim is "directly on point." (See 51 Ops.Cal.Atty.Gen. 235 (1968).) In that opinion, one of the questions presented was whether a LAFCO could "employ staff on a contract basis." (*Ibid.*) In the Attorney

General's view, "the executive officer of a [LAFCO] must be an employee." (*Id.* at p. 238.) The Attorney General explained as follows: "The executive officer must be directly responsible to the commission and it, in turn, must have the right of control over his work since the day to day functions of the commission will be carried out by this officer. It would be intolerable for an executive officer to be retained under a contract whereby he could be controlled by the commission only with respect to the result of his work and not otherwise. . . . Whether he is appointed by virtue of having obtained the highest score on a competitive examination or whether he is retained by contract are not per se determining factors. Instead, the crucial factor is whether the relationship of employer-employee is made evident in the documents of employment." (*Ibid.*)

We disagree with the opinion of the Attorney General, which in any event is not binding on us. (*Lucas v. Board of Trustees* (1971) 18 Cal.App.3d 988, 991–992 [96 Cal.Rptr. 431].) Without authority, the opinion simply concludes it would be "intolerable" for an executive officer to be subject to the commission's control only with respect to the result of his work and not otherwise. (51 Ops.Cal.Atty.Gen., *supra*, at p. 238.) In relying on this opinion, the Hofman plaintiffs offer no reasonable explanation why this conclusion should be true. Indeed, logic compels the opposite conclusion. A LAFCO hires an executive officer to carry out its "day-to-day business." (§ 56384, subd. (a).) Once these functions are delegated to the executive officer, it is unnecessary for a LAFCO to have day-to-day control over the executive officer with regard to the performance of the very functions it has delegated away. A LAFCO's control over the final result, as the agreement here provides, ensures the needs of the LAFCO will be met without burdening commission members with micromanaging the day-to-day business of the LAFCO. For these reasons, the fact that the agreement provided Benoit was "not subject to the direction and control of LAFCO except as to the final result" is irrelevant to our analysis of whether he was the executive officer.

The second argument, which alleges lack of substantiality of the evidence we have cited, similarly fails. The argument's main thrust is that the cited evidence did not "show[] that Benoit took any action in furtherance of LAFCO's day-to-day business." Rather, it showed "at best, that Benoit attended a meeting or signed a document on seven (7) out of the 154 days on and between January 12 and June 14, 2006." (Fn. omitted.) This is not true. The meeting minutes and the correspondence memorialized Benoit's ongoing activities on behalf of Yuba LAFCO, and those activities were not limited to

the dates of the meetings or correspondence. Those ongoing activities, as we have already explained, constituted the day-to-day business of Yuba LAFCO.[3]

Nor does other "uncontroverted evidence" recounted by the Hofman plaintiffs undermine the cited evidence. The evidence they recount includes evidence that Benoit was providing services to four other LAFCO's at the same time he was providing services to Yuba LAFCO and evidence that the agreement between Yuba LAFCO and Benoit stated he was not subject to the direction and control of Yuba LAFCO, would not be paid for action that was not authorized in the agreement, and would not perform his actions as an "agent, officer or employee of LAFCO." None of this evidence undermines the evidence we have cited that demonstrated Benoit, in fact, was performing the day-to-day business of Yuba LAFCO. At most, the contractual language is evidence that the agreement might have conflicted with what Benoit actually did. As the trial court aptly noted, the "critical" issue was whether Benoit was functioning as the Yuba LAFCO executive officer "notwithstanding the provisions of the agreement." Furthermore, Benoit's representation of more than one LAFCO is not evidence that Benoit was not performing the day-to-day business of Yuba LAFCO. As evidence in the record explains, "many smaller counties do not have sufficient workload to support a full-time independent [LAFCO] staff" and that " 'months [might] go by without an annexation to consider . . . .' "[4]

In sum, the Hofman plaintiffs have failed to establish that Benoit was not conducting the day-to-day business of Yuba LAFCO. Given our conclusion that he was, Benoit was Yuba LAFCO's executive officer and his performance evaluation in closed session was proper.

---

[3] At one point in their opening brief, the Hofman plaintiffs allege the trial court "seemingly acknowledged" Benoit was not authorized to conduct and perform the day-to-day business of Yuba LAFCO. To support their allegation, however, they cite only a portion of the trial court's ruling.

In full, the relevant portion of the trial court's ruling is as follows: provision A-1 of the agreement "defines 12 categories of services, none of which includes the definition 'executive officer' and none of which explicitly obligates Benoit to 'conduct and perform the day-to-day business of the commission' *but all of which categories, taken together with the title of the agreement and its first sentence are considered to define activity which reasonably can be taken to define the duties of an executive officer* . . . ." (Italics added.) The italicized portion of the trial court's ruling, which the Hofman plaintiffs fail to cite, belies their allegation the trial court "seemingly acknowledged" Benoit was not authorized to conduct and perform the day-to-day business of Yuba LAFCO.

[4] These statements appear in Growth Within Bounds: Planning California Governance for the 21st Century at page 44, which was published in January 2000 as a Report of the Commission on Local Governance for the 21st Century. (See *Placer County Local Agency Formation Com. v. Nevada County Local Agency Formation Com.*, supra, 135 Cal.App.4th at p. 817.)

## DISPOSITION

The judgment is affirmed. Defendants are awarded their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

Scotland, P. J., and Hull, J., concurred.