[No. D007718. Fourth Dist., Div. One. Feb. 27, 1989.]

FALLBROOK SANITARY DISTRICT, Plaintiff and Appellant, v. SAN DIEGO LOCAL AGENCY FORMATION COMMISSION et al., Defendants and Respondents.

754

COUNSEL

Behrens, Recht, Finley, Hanley & Holford, William B. Hanley and Janet R. Morningstar for Plaintiff and Appellant.

Lagerlof, Senecal, Drescher & Swift, H. Jess Senecal and Jack T. Swafford as Amici Curiae on behalf of Plaintiff and Appellant.

Lloyd M. Harmon, Jr., County Counsel, Daniel J. Wallace and William D. Smith, Deputy County Counsel, for Defendants and Respondents.

OPINION

BENKE, J.—

### FACTUAL SUMMARY

On December 15, 1986, the Fallbrook Public Utilities District (FPUD), pursuant to the Cortese/Knox Local Government Reorganization Act of 1985 (Gov. Code,[1] § 56000 et seq.), applied to the San Diego County Local Agency Formation Commission (LAFCO) for approval of a plan to incorporate the new city of Fallbrook.

The proposal FPUD made to LAFCO included dissolution of a number of county service areas and the partial detachment of one such service area.

---

[1] All statutory references are to the Government Code unless otherwise specified.

Under FPUD's proposal the service areas would be replaced with city improvement districts and park and recreation services provided by the new city. The boundaries of the new city encompassed entirely the territories of FPUD and the Fallbrook Sanitary District (FSD).

On December 9, 1987, LAFCO held a hearing on FPUD's proposal. At the hearing LAFCO approved the proposal but added to it a provision which would reorganize FSD and FPUD. Under the provision added by LAFCO, FSD and FPUD would have been transformed from independent special districts to subsidiary districts of the new city. As subsidiary districts they would be governed by the Fallbrook City Council rather than their own independently elected board of directors. (§ 56078.)

FSD objected to LAFCO's proposal at the December 9, 1987, hearing. Later, on January 11, 1988, LAFCO heard and denied FSD's request for reconsideration of LAFCO's earlier decision. On February 3, 1988, the Board of Supervisors of San Diego County conducted a protest hearing, determined that there was not a majority protest to the incorporation proposal approved by LAFCO and called an election on the proposal for June 7, 1988.

FSD filed a petition for a peremptory writ of mandate in the superior court on February 11, 1988. FSD's petition asked that LAFCO be ordered to delete that portion of the proposed Fallbrook incorporation plan which would make FSD a subsidiary district of the new city. After briefing by FSD and LAFCO, the petition was heard on February 29, 1988. The superior court entered an order denying the petition on March 1, 1988, and FSD filed a timely notice of appeal.

On June 7, 1988, a majority of the voters in the proposed city of Fallbrook rejected the incorporation proposal put before them.

ISSUES ON APPEAL

On appeal we are asked to determine whether FSD's objections to the incorporation proposal are now moot. If those objections are not moot, we are asked to determine whether LAFCO had the power to make additions to FPUD's incorporation proposal.

DISCUSSION

I

*While Moot, the Issues Presented Should Be Addressed*

In light of the fact the Fallbrook incorporation proposal was not approved by the voters, LAFCO has moved to dismiss FSD's appeal as moot. ■ Admittedly since FSD will not be made a subsidiary district, it is in no way aggrieved by the superior court's order denying its petition. "One who is not aggrieved by a decision of the lower court has no right of appeal therefrom. [Citations.] ■ And of course an appeal which has become moot is subject to dismissal. [Citation.]" (*People* v. *West Coast Shows, Inc.* (1970) 10 Cal.App.3d 462, 467 [89 Cal.Rptr. 290].)

However, where the issues raised on appeal affect the general public interest and there is a reasonable probability that the same questions will again be litigated, an appellate court may, although the appeal is subject to dismissal, adjudicate the issues involved. (*Eye Dog Foundation* v. *State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541 [63 Cal.Rptr. 21, 432 P.2d 717]; *People* v. *West Coast Shows, Inc., supra,* 10 Cal.App.3d at p. 468; see also *Roe* v. *Wade* (1973) 410 U.S. 113, 125 [35 L.Ed.2d 147, 161, 93 S.Ct. 705].) This rule has been applied where, as here, although an intervening election has resolved the parties' dispute, questions concerning the validity or interpretation of a statute remain unanswered. (*County of Madera* v. *Gendron* (1963) 59 Cal.2d 798, 804 [31 Cal.Rptr. 302, 382 P.2d 342, 6 A.L.R.3d 555] [validity of statute forbidding private practice of law by sitting district attorney question of public importance which should be decided even though defendant district attorney defeated at election held during pendency of appeal]; *District Election etc. Committee* v. *O'Connor* (1978) 78 Cal.App.3d 261, 265 [144 Cal.Rptr. 442] [conflict between county charter requirements for initiative petition and Gov. Code requirements resolved by court even though initiative sponsors met requirements of both charter and code while case on appeal.])

■ In this case FSD has argued that LAFCO does not have the power to make any material additions to government organization proposals which are brought before it. Because the questions FSD has raised about the scope of LAFCO's powers is a matter which affects 57 other local agency formation commissions in California (see § 56375), as well as the innumerable agencies which may be subject to substantial alteration by way of similar incorporation proposals, there is a public interest in resolving the questions FSD has raised. Moreover according to LAFCO's executive director, LAF-

CO has made additions to six other incorporation proposals in San Diego County. This fact suggests the issue is likely to arise again. Accordingly, while we must dismiss the appeal, we will nonetheless adjudicate the merits of FSD's contention that LAFCO did not have the power to make additions to FPUD's proposal.[2] (See *People v. West Coast Shows, Inc., supra,* 10 Cal.App.3d 462, 469.)

## II

### *LAFCO's Powers*

In 1985, the Legislature repealed the Knox-Nisbet Act (former § 54773 et seq.), the District Reorganization Act of 1965 (former § 56000 et seq.) and the Municipal Organization Act of 1977 (former § 35000 et seq.), and replaced these laws with the Cortese-Knox Act (act). (Stats. 1985, ch. 541, § 3, p. 1920.) The provisions of the new act, commencing with section 56000 became operative January 1, 1986. (*Ibid.*)

Section 56001 provides in part: "The Legislature finds and declares that it is the policy of the state to encourage orderly growth and development which are essential to the social, fiscal, and economic well-being of the state. The Legislature recognizes that the logical formation and determination of local agency boundaries is an important factor in promoting orderly development. Therefore, the Legislature further finds and declares that this policy should be effected by *the logical formation and modification of the boundaries of local agencies.*

". . . The Legislature also recognizes that when areas become urbanized to the extent that they need the full range of community services, priorities are required to be established regarding the type and levels of services that the residents of an urban community need and desire; . . . The Legislature finds and declares that *a single governmental agency,* rather than several limited purpose agencies, is in many cases better able to assess and be accountable for community service needs and financial resources and, therefore, *is the best mechanism for establishing community service priorities.*" (Italics added.)

Section 56107 in turn provides that the act "shall be liberally construed to effectuate its purposes."

Consistent with its stated purposes, the act is the "sole and exclusive authority and procedure" for making changes in local governmental organi-

---

[2] In addition to its attack upon LAFCO's powers, FSD also argues that the commission's decision was not supported by adequate evidence and that the report prepared by the commission's staff is defective. These claims do not involve matters of broad public interest which are likely to arise again. Accordingly we do not reach their merits.

zations. (§ 56100.) Section 56325 requires that every county have a local agency formation commission. Commission members are appointed by local legislative bodies. (§ 56325.) Section 56375, subdivision (a), gives those commissions the following powers: "To review and approve or disapprove with or without amendment, wholly, partially, or conditionally, proposals for changes of organization or reorganization. . . ."[3]

The commission has been described as the " 'watchdog' the Legislature established to guard against the wasteful duplication of services that result from indiscriminate formation of new local agencies or haphazard annexation of territory to existing local agencies." (*Timberidge Enterprises, Inc.* v. *City of Santa Rosa* (1978) 86 Cal.App.3d 873, 884 [150 Cal.Rptr. 606], quoting *City of Ceres* v. *City of Modesto* (1969) 274 Cal.App.2d 545, 553 [79 Cal.Rptr. 168].)

After a change of organization or reorganization has been approved by a commission, the change must then be passed upon by a local conducting authority pursuant to the provisions of section 57000 et seq. A "conducting authority" is a local legislative body—usually a board of supervisors or city council. (§ 57075.) A conducting authority may reject an incorporation of inhabited territory only when it has received signed protests from a majority of the voters in the territory. (§§ 57077, subd. (a)(1), 57078, subd. (b).) Otherwise the conducting authority must either hold an election on the proposal or approve it without an election. (§ 57077, subds. (a)(2), (3).)

In this case FSD argues the powers described in section 56375, subdivision (a), only permit a commission to make its material additions *a condition of approval*. Under FSD's interpretation, LAFCO could make substantive additions to a proposal, but the initiators of the proposal would always be free to withdraw their proposal entirely if they found the conditions imposed by the commission unacceptable.

In construing a statute, our initial task is to ascertain the intent of the Legislature. (*Dyna-Med Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386 [241 Cal.Rptr. 67, 743 P.2d 1323].) We look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence. (*Ibid.*) We must also consider the statutory language in the context of the legislative purpose. (*Id.* at p. 1387.)

In this case, like the parties, our focus is on the phrase "with or without amendment" as it is used in section 56375, subdivision (a). The Random House Dictionary of the English Language (2d ed. 1987) at page

---

[3] Under the act a city incorporation is a "change of organization." (§ 56021.)

66 defines amendment as "1. the act of amending or the state of being amended. 2. an alteration of or *addition* to a motion, bill, constitution, etc. 3. a change made by correction, *addition,* or deletion." (Italics added.) Similarly Black's Law Dictionary (5th ed. 1979) at page 74 defines amendment as "To change or modify for the better. To alter by modification, deletion, or *addition.*" (Italics added.) Modification in turn is defined as "A change; an alteration or amendment which introduces new elements into the details, or cancels some of them, *but leaves the general purpose and effect of the subject-matter intact.*" (Black's Law Dict., *supra,* at p. 905 (italics added); see also *Andersen* v. *Civil Service Com.* (1981) 122 Cal.App.3d 577, 579 [176 Cal.Rptr. 66]: " '[m]odify' means 'to alter; to change an incidental or subordinate feature; enlarge, extend; limit, reduce.' "

FSD's interpretation of section 56375, subdivision (a), which would allow material deletions but not material additions, is not consistent with these definitions. Contrary to FSD's argument the plain meaning of the words chosen by the Legislature—"with or without amendment"—encompass both additions and deletions so long as the general nature of the subject matter is not changed. Moreover because "with or without amendment" precedes "conditionally" in a sentence where those powers are described in the alternative, it is difficult to accept FSD's argument that "conditionally" somehow modifies "with or without amendment."

The limitation FSD suggests is also inconsistent with the Legislature's expressed goals in this area. Under FSD's interpretation of section 56375, LAFCO could never add an agency without the proponents' consent. The vice in this interpretation lies in the fact that the power to amend would rest with the proponents, not LAFCO. Such a hindrance to LAFCO's power to promote the logical formation and modification of local agencies is at odds with the Legislature's creation of an independent agency designed to bring about a unified and accountable government. (See § 56001; *Timberidge Enterprises, Inc.* v. *City of Santa Rosa, supra,* 86 Cal.App.3d 873, 884.) Simply stated, a "watchdog" has few teeth if it must obtain approval from proponents of matters which do not alter the nature of a proposal but which the agency believes are in the interest of accountable and efficient government.

We note that FSD and amici curiae rely upon *Timberidge Estates, Inc.* v. *City of Santa Rosa, supra,* 86 Cal.App.3d at page 884, and *City of Ceres* v. *City of Modesto, supra,* 274 Cal.App.2d at page 553. Their reliance is misplaced. In *Timberidge Estates* a commission attempted to intervene in a dispute between a developer and a city over the propriety of land use regulations. In *City of Ceres* opponents of a plan to extend city sewer services to an unincorporated area argued that the extension was inconsis-

tent with a commission's tentative plans for the area. In both instances the Courts of Appeal held that since no proposal had ever been made to either commission, the respective commissions lacked any authority to act. In both cases the courts said " 'the extent of LAFCO's power is to approve or disapprove *"wholly, partially or conditionally" ACTUAL and PRECISE proposals which are presented to it from time to time for its consideration.'* " (*Timberidge Enterprises, Inc.* v. *City of Santa Rosa, supra,* 86 Cal.App.3d at p. 884; *City of Ceres* v. *City of Modesto, supra,* 274 Cal.App.2d at p. 553.) Because *no* proposal had been made to a commission in these cases, this language is not helpful in determining what powers arise when a proposal *is* made.

FSD and amici also argue that an unconditional power to amend set forth in section 56375 is inconsistent with other provisions of the act. In particular FSD relies upon the detailed description of commission powers set forth in chapter 5 of part 3 of the act, section 56825 et seq. FSD points out that the power to make additions to proposals is not mentioned in any of the 29 specific powers described in sections 56843 and 56844.[4] The district also

---

[4] Section 56843 provides: "(a) In any commission order giving approval to any change of organization or reorganization, the commission may make that approval conditional upon any of the following factors:

"(1) Any of the conditions set forth in Section 56844.

"(2) The initiation, conduct, or completion of proceedings for another change of organization or a reorganization.

"(3) The approval or disapproval, with or without election, as may be provided by this division, of any resolution or ordinance ordering that change of organization or reorganization.

"(b) If the commission so conditions its approval, the commission may order that any further action pursuant to this division be continued and held in abeyance for the period of time designated by the commission, not to exceed six months from the date of that conditional approval.

"(c) The commission order may also provide that any election called upon any change of organization or reorganization shall be called, held, and conducted before, upon the same date as, or after the date of any election to be called, held, and conducted upon any other change of organization or reorganization.

"(d) The commission order may also provide that in any election at which the questions of annexation and district reorganization or incorporation and district reorganization are to be considered at the same time, there shall be a single question appearing on the ballot upon the issues of annexation and district reorganization or incorporation and district reorganization."

Section 56844 provides: "Any change of organization or reorganization may provide for, or be made subject to one or more of, the following terms and conditions. However, none of the following terms and conditions shall directly regulate land use, property development, or subdivision requirements:

"(a) The payment of a fixed or determinable amount of money, either as a lump sum or in installments, for the acquisition, transfer, use or right of use of all or any part of the existing property, real or personal, of any city, county, or district.

". . . . . . . . . . . . . . . . . . .

"(v) Any other matters necessary or incidental to any of the terms and conditions specified in this section."

points out that after a hearing on a proposed change of organization, section 56851 requires commissions adopt "a resolution making determinations approving or disapproving the proposal, with or without conditions, the plan of reorganization, or any alternative plan or reorganization as set forth in the report and recommendation of a reorganization committee." FSD believes that the absence of the power to amend in the otherwise detailed provisions of this portion of the act should be interpreted as an implied modification of the more general delegation of power in section 56375.

However FSD ignores two other provisions in chapter 5 of part 3—sections 56825 and 56852. Section 56825 states: "The commission shall have the powers and duties set forth in Part 2 (commencing with Section 56300) and the additional powers and duties specified in this chapter."

Section 56852 provides: "The resolution making determinations *shall also* do all the following: (a) Make any of the findings or determinations authorized or required pursuant to Section 56375. . . ." (Italics added.)

Thus, contrary to FSD's argument, the provisions of chapter 5 of part 3 themselves make it clear that the detailed powers set forth in that portion of the act supplement rather than limit the powers described in section 56375.

FSD and its expert also argue that the absence of the power to amend in section 57085 implicitly circumscribes the powers given commissions in section 56375. However section 57085 is set forth in part 4 of the act. The subject matter of part 4 is described in section 57000. In particular section 57000, subdivision (b), provides: "If a proposal is approved by the commission, with or without amendment, wholly, partially, or conditionally, the *conducting authority* shall conduct proceedings in accordance with *this part*. . . ." (Italics added.)

Thus the provisions of section 57085 regulate proceedings before *conducting authorities* and cannot be read as an implied limitation on the distinct power of *commissions*. Rather section 57000's repetition of section 56375's broad description of LAFCO powers suggests the Legislature meant what it said when it gave LAFCO the power to amend.

Next, FSD argues that addition of a subsidiary district without the consent of proponents is inconsistent with the provisions of sections 56829,

56830 and 56831.[5] ▮ ▮▮ ▮▮ ▮▮ Those sections regulate proposals to establish subsidiary districts and require that any district which is subject to such a proposal be given notice and the opportunity to offer an

---

[5] Section 56829 provides: "(a) Within 10 days after receiving a proposal to form a subsidiary district, the executive officer shall notify by certified mail the district or districts which are the subject of the proposal.

"(b) Within 35 days after receiving the notice from the executive officer, the board of directors of the subject district or districts may do either of the following:

"(1) Adopt a resolution consenting to the subsidiary district proposal, with or without requesting additional terms and conditions.

"(2) Adopt a resolution of intention to file an alternative proposal to the subsidiary district proposal.

"(c) Any resolution adopted under paragraph (1) or (2) of subdivision (b) shall immediately be filed with the executive officer.

"(d) This section shall remain in effect only until January 1, 1990, and as of that date is repealed, unless a later enacted statute, which is chaptered before January 1, 1990, deletes or extends that date."

Section 56830 provides: "(a) If a district files a resolution of intention to file an alternative proposal pursuant to paragraph (2) of subdivision (b) of Section 56829, the executive officer shall take no further action on the original proposal to form a subsidiary district for a period of 70 days. During this period, the district which has filed a resolution of intention shall prepare and submit a completed application for the alternative proposal in a form similar to the original proposal, as prescribed by the commission.

"(b) A district which has filed a resolution of intention to file an alternative proposal but which does not file a completed application within the prescribed time period, shall be deemed to have consented to the original proposal to form a subsidiary district.

"(c) After receiving an alternative proposal, the executive officer shall analyze and report on both the original proposal and the alternative proposal concurrently and set both for hearing by the commission in order that both proposals may be considered simultaneously at a single hearing.

"(d) 'Alternative proposal,' as used in this section, means an alternative proposal to a subsidiary district proposal as provided for in Section 56829.

"(e) This section shall remain in effect only until January 1, 1990, and as of that date is repealed, unless a later enacted statute, which is chaptered before January 1, 1990, deletes or extends that date."

Section 56831 provides: "(a) Within 35 days following the conclusion of a hearing on an original and an alternative proposal to form a subsidiary district, the commission shall adopt its resolution of determination, which shall do one of the following:

"(1) Deny both the original proposal and the alternative proposal.

"(2) Approve both the original proposal and the alternative proposal.

"(3) Approve one proposal and deny the other.

"(b) If the commission approves both proposals, it shall adopt an order directing the board of supervisors to consider both proposals at a single hearing and to do one of the following:

"(1) Deny both the original proposal and the alternative proposal.

"(2) Approve both the original proposal and the alternative proposal.

"(3) Approve one proposal and deny the other.

"(c) 'Alternative proposal,' as used in this section, means an alternative proposal to a subsidiary district proposal as provided for in Section 56829.

"(d) This section shall remain in effect only until January 1, 1990, and as of that date is repealed, unless a later enacted statute, which is chaptered before January 1, 1990, deletes or extends that date."

alternative proposal.[6] In our view the procedural rights given *districts* subject to a proposal which threatens their independent status cannot be construed as affording *proponents* any additional role in the process of approving a change in organization. Indeed under section 56831, subdivision (a), the power to resolve any conflicts between proposals establishing subsidiary districts and alternatives proposed by the subject districts rests with LAFCO. Thus, section 56831, subdivision (a), suggests that, contrary to FSD's argument, the Legislature intended that LAFCO— rather than proponents or districts themselves—determine when addition or deletion of subsidiary districts is appropriate.[7]

Finally, as it did in the trial court, FSD relies upon expert evidence of the act's legislative history. ■ Such evidence is an appropriate means of assisting courts in understanding and interpreting statutes. (See *Roberts* v. *Gulf Oil Corp.* (1983) 147 Cal.App.3d 770, 782 [195 Cal.Rptr. 393].) ■ In this case the history of the act and its constituent predecessors demonstrates a continuing conflict between those who, in the interest of efficient government, would give commissions the power to initiate consolidation or dissolution of governmental agencies and those who, in the interest of self-preservation, wish to protect the myriad of limited purpose agencies and districts from extinction. In particular, legislation which would give LAFCO the power to initiate such changes has been rejected by the Legislature.[8]

Like FSD's expert, we agree that in light of both the history of the act and its express provisions, commissions have no power to initiate changes in organization or reorganization. Application for such changes must be initiated either by a petition of voters or, as here, by the resolution of an affected agency or agencies. (§§ 56650, 56700, 56800.) The act provides no other

---

[6] FSD also argues that in fact it was denied the procedural protections provided by sections 56829 through 56831. We note however that there is nothing in the record which indicates that FSD did not receive notice of the amendment within 10 days after it was proposed by the commission's staff as might be required by section 56829; nor does the record suggest that FSD offered an alternative proposal under the provisions of section 56830. Thus, like the claim that LAFCO's decision is not supported by adequate evidence, the record on this issue does not present a question of broad interest which is likely to recur and we do not reach its merits.

[7] This is not meant to suggest safeguards a district may have respecting opportunity to respond to proposed action by LAFCO are eliminated or otherwise affected.

[8] Assembly Bill No. 169, as introduced by Assembly Member Hannigan on December 31, 1986, proposed an amendment to section 56375 which would have provided that: "The commission may itself initiate proposals for consolidation, dissolution, merger, establishment of a subsidiary district, annexation of territory meeting the requirements of subdivision (d), or a reorganization which includes any of these changes of organization." Later during the legislative session this amendment was deleted from Assembly Bill No. 169.

means of instituting changes of organization or reorganization.[9] The legislative history, however, is entirely consistent with the plain meaning we have ascribed to the phrase "with or without amendment." Additions which do not involve a change in the general nature of a proposal do not represent any initiation of a proposal.[10]

The addition of FSD to the Fallbrook plan of incorporation was proper. In addition to controlling sanitation services, a city may provide its residents with, among other services, police and fire protection, paramedic services, traffic control, lifeguard service, animal control, parks, libraries, land-use regulation, building inspection, low-cost housing, stadiums and cemeteries. Given this panoply of potential services, the nature of a city with control over the sanitation services within its boundaries is fundamentally similar to a city without such power. Thus the alteration made by LAFCO cannot be said to have changed the general purpose or effect of the incorporation proposal.

For the reasons set forth in part I of this opinion, the appeal is dismissed. (*People* v. *West Coast Shows, Inc., supra,* 10 Cal.App.3d at p. 471.) Parties are to bear their own costs of appeal.

Kremer, P. J., and Wiener, J., concurred.

A petition for a rehearing was denied March 28, 1989, and appellant's petition for review by the Supreme Court was denied May 18, 1989.

---

[9] We note however that under section 56450 a commision may initiate the adoption, amendment or repeal of regulations affecting the functions and services of special districts so long as special districts are represented on the commission.

[10] In responding to FSD's arguments, LAFCO asserts its power to alter a proposal extends to anything reasonably germane to the subject matter of the proposal. While in light of the legislative history we express discomfort with this broad statement, there is no reason here to decide the merits of LAFCO's interpretation of its powers. There is no question in this case but that LAFCO's action was within the scope of its statutory powers as we have interpreted them.