EDMUND G. BROWN JR. Attorney General TAYLOR S. CAREY Deputy Attorney General
THE HONORABLE ROBERT A. RYAN, JR., COUNTY COUNSEL, COUNTY OF SACRAMENTO, has requested an opinion on the following question:
Does a Local Agency Formation Commission have the authority to enlarge the boundaries of a proposed incorporation beyond those set forth in the petition for incorporation?
 CONCLUSION
A Local Agency Formation Commission has the authority to enlarge the boundaries of a proposed incorporation beyond those set forth in the petition for incorporation. *Page 2 
 ANALYSIS
This question arises from a situation in which there is a proposal for the incorporation of a new city, but there is some dispute about where the boundaries of the new city should be drawn. The petition for incorporation excludes a certain area that the surrounding county believes should logically be included within the city's boundaries. The county believes that leaving the area unincorporated would create significant problems for the county, which would retain responsibility for providing services to that area. May the county's Local Agency Formation Commission (LAFCO) enlarge the proposed boundaries of the new city to include the disputed area? We conclude that it may.
The Cortese-Knox-Hertzberg Local Government Reorganization Act (Act) of 2000[1] establishes a LAFCO in each county to encourage orderly growth and development and the assessment of local community services needs.[2] After a LAFCO has reviewed a proposal, held hearings on it, and made any appropriate decisions, the proposal is normally submitted to the affected residents or landowners for a vote.[3]
When a petition is presented to a LAFCO for the incorporation of a city, the petitioners are required to specify the exact boundaries of the proposal.[4] Hence, it is not a LAFCO's responsibility to establish the boundaries of a proposed incorporation in the first instance.[5] While the Act does not expressly authorize a LAFCO to change the boundaries of a proposed incorporation, it does authorize a LAFCO "[t]o review and approve or disapprove with or without amendment, wholly, partially, or conditionally, proposals for changes of organization or reorganization, consistent with written policies, procedures, and *Page 3 
guidelines adopted by the commission."[6] This statutory authorization has been interpreted to include the authority to change the boundaries proposed by the petitioners.[7]
Naturally, a LAFCO's authority to change proposed boundaries is not without limitation. To begin with, the Act requires that any amendment to a proposal be "consistent with written policies, procedures, and guidelines adopted by the commission."[8] Additionally, a LAFCO may not amend a proposal in a way that changes the fundamental nature of the proposal.[9]
Within these limits, there may be any number of reasons why a LAFCO would consider changing the boundaries of a proposed incorporation area. For example, a LAFCO is required to "review the boundaries of the territory involved in any proposal with respect to the definiteness and certainty of those boundaries, the nonconformance of proposed boundaries with lines of assessment or ownership, and other similar matters affecting the proposed boundaries."[10] Thus, if the boundaries described in the petition are imprecise or do not properly reflect assessment or ownership boundaries, the LAFCO may be required to correct them.
In Tillie Lewis Foods, Inc. v. City of Pittsburg, the court of appeal remarked that a LAFCO may be required to "redraw the proposed boundaries by way of amendment or as a condition of its approval" in order to check the practice of manipulating the boundaries of annexation proposals "with the objective of bringing the affected territory within the purview *Page 4 
of one annexation Act or the other for spurious political purposes."[11]
Another reason why a LAFCO might change a petitioner's proposed boundaries is to deal with environmental concerns. Like any other governmental agency, a LAFCO must address itself to environmental considerations in accordance with the procedures set forth in the California Environmental Quality Act (CEQA), for any project that will have a significant effect on the environment.[12]
Or again, a LAFCO may change the boundaries of a proposal to prevent "`an overlap of service responsibilities and inefficiencies in service provision'"[13] or "to bring about a unified and accountable government."[14] Indeed, these purposes lie at the heart of the policy that underlies the entire local government reorganization scheme.[15] *Page 5 
In light of these authorities, we believe that a decision to enlarge the boundaries of an incorporation proposal to promote the efficient extension of services would be an appropriate exercise of a LAFCO's powers to approve, disapprove, or amend a proposal.[16]
We therefore conclude that a Local Agency Formation Commission has the authority to enlarge the boundaries of a proposed incorporation beyond those set forth in the petition for incorporation.
[1] Govt. Code §§ 56000-57550.
[2] Id. at §§ 56325-56337; see Placer County Local Agency FormationCom. v. Nevada County Local Agency Formation Com.,135 Cal. App. 4th 793, 798 (2006) (LAFCOs described as "watchdogs," guarding against "indiscriminate" or "haphazard" organization of governmental functions).
[3] Govt. Code §§ 56880, 57100.
[4] Id. at § 56700(a)(3).
[5] Accord 57 Ops.Cal.Atty.Gen. 423, 433 (1974) (concluding it was not a LAFCO's duty to draw preliminary boundaries, under former Knox-Nisbet Act, Govt. Code §§ 54773 et seq.).
[6] Govt. Code § 56375(a).
[7] Tillie Lewis Foods, Inc. v. City of Pittsburg,52 Cal. App. 3d 983, 1003 (1975) ("It is true that LAFCO may `establish' new boundaries by altering those proposed pursuant to its power to approve a proposal `with . . . amendment.'); see also id. at n. 17 ("Such action, taken on an `ad hoc' and case-by-case basis, has been a common occurrence in the LAFCO experience." (Citing Richard T. LeGates, Cal. Local AgencyFormation Commissions, 64-65 (U. Cal. Berkeley Inst. Govt. Studies 1970)).
[8] Govt. Code § 56375(a).
[9] Fallbrook Sanitary Dist. v. San Diego Local Agency FormationCom., 208 Cal. App. 3d 753, 765 (1989) ("[T]he alteration made by LAFCO cannot be said to have changed the general purpose or effect of the incorporation proposal.").
[10] Govt. Code § 56375(l).
[11] Tillie, 52 Cal. App. 3d at 1005-1006.
[12] Bozung v. Local Agency Formation Com., 13 Cal. 3d 263, 282
(1975); see id. at 276 (LAFCO is governmental agency within meaning of CEQA); see generally Public Resources Code § 26000 et seq. (CEQA).
[13] Placer, 135 Cal. App. 4th at 798 (quoting Daniel J. Curtin,Curtin's Cal. Land Use and Planning Law, 381-382 (24th ed., Solano Press 2004)).
[14] Fallbrook, 208 Cal. App. 3d at 760.
[15] Govt. Code § 56001:
 The Legislature finds and declares that it is the policy of the state to encourage orderly growth and development which are essential to the social, fiscal, and economic well-being of the state. The Legislature recognizes that the logical formation and determination of local agency boundaries is an important factor in promoting orderly development and in balancing that development with sometimes competing state interests of discouraging urban sprawl, preserving open-space and prime agricultural lands, and efficiently extending government services. The Legislature also recognizes that providing housing for persons and families of all incomes is an important factor in promoting orderly development. Therefore, the Legislature further finds and declares that this policy should be effected by the logical formation and modification of the boundaries of local agencies, with a preference granted to accommodating additional growth within, or through the expansion of, the boundaries of those local agencies which can best accommodate and provide necessary governmental services and housing for persons and families of all incomes in the most efficient manner feasible.
 The Legislature recognizes that urban population densities and intensive residential, commercial, and industrial development necessitate a broad spectrum and high level of community services and controls. The Legislature also recognizes that when areas become urbanized to the extent that they need the full range of community services, priorities are required to be established regarding the type and levels of services that the residents of an urban community need and desire; that community service priorities be established by weighing the total community service needs against the total financial resources available for securing community services; and that those community service priorities are required to reflect local circumstances, conditions, and limited financial resources. The Legislature finds and declares that a single multipurpose governmental agency is accountable for community service needs and financial resources and, therefore, may be the best mechanism for establishing community service priorities especially in urban areas. Nonetheless, the Legislature recognizes the critical role of many limited purpose agencies, especially in rural communities. The Legislature also finds that, whether governmental services are proposed to be provided by a single-purpose agency, several agencies, or a multipurpose agency, responsibility should be given to the agency or agencies that can best provide government services.
[16] Id. at § 56375(a). *Page 1