Filed 5/25/23

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| MARTHA BARAJAS et al., | B317653 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC713381) |
| v. | |
| SATIVA L.A. COUNTY WATER DISTRICT, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daniel J. Buckley, Judge. Affirmed.

---

\* Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication as to all parts except Part II of the Discussion.

The Law Office of Mark Ravis & Associates and Mark Ravis; Reyes & Associates and Jorge Reyes for Plaintiffs and Appellants.

Kessel & Megrabyan, Elizabeth Mary Kessel, Armineh Megrabyan and Steven J. Lowery for Defendant and Respondent.

\* \* \* \* \* \*

The Cortese-Knox-Hertzberg Local Government Reorganization Act of 2000 (the Reorganization Act or the Act) governs the dissolution of local agencies in California, including local water districts. (Gov. Code, §§ 56100, subd. (a), 56301, 56021, subd. (h); see generally § 56000 et seq.)[1] In this case, the California Legislature took action to specifically dissolve the board of directors of one such water district with a long history of incompetent management, and the pertinent county's Local Agency Formation Commission (LAFCO) subsequently dissolved the district itself. The question presented is: Can a lawsuit against the district be maintained after the district and its board are both dissolved, on the theory the district still must "wind up" its affairs? The answer is: It depends. The Reorganization Act grants a LAFCO discretion whether to permit a district to wind up its own affairs or whether instead to appoint a successor agency responsible for doing so. (§§ 56035, 57450-57463.) Because the LAFCO in this case took the latter route, the plaintiffs' class action lawsuit against the dissolved district must be dismissed. In the unpublished portion of this opinion, we further conclude that the trial court's dismissal of the successor

_____

[1] All further statutory references are to the Government Code unless otherwise indicated.

agency was proper because our Legislature expressly granted civil immunity to that agency. Thus, we affirm the trial court's dismissal of the plaintiffs' lawsuit.

**FACTS AND PROCEDURAL BACKGROUND**

I. **Facts**

A. ***Sativa Los Angeles County Water District (the Sativa Water District or the District)***

The Sativa Water District was created in 1938 under the County Water District Law (Wat. Code § 30000 et seq.) to provide potable drinking water to the residents living in a neighborhood in the unincorporated community of Willowbrook and parts of the City of Compton within Los Angeles County. The District's service area encompasses 180 acres of land, and uses nine miles of pipeline and 1,643 service connections to deliver potable drinking water to more than 6,800 residents. This area is also considered a "disadvantaged unincorporated community," which means the median household income of the residents is less than 80 percent of the statewide annual median household income. (Gov. Code, § 56033.5; Wat. Code, § 79505.5) The District is governed by a five-member board of directors. In 2018, it was insured by the Special District Risk Management Authority.

B. ***The Sativa Water District fails at its core task***

From at least 1994 through July 2018, the Sativa Water District "repeatedly" "failed to comply with the monitoring and reporting requirements" designed to secure potable water to the District's residents. On June 1, 2018, the State Water Resources Control Board (the State Board) issued a compliance order (1) finding that the Sativa Water District was "violating the California Safe Drinking Water Act" by "fail[ing] to provide its customers with a reliable and adequate supply of pure,

3

wholesome, healthful, and potable water . . . and failed to comply with the source capacity, minimum flushing velocity, and minimum pressure requirements" of California law, and (2) ordering the District to undertake regular testing of its water supply and to submit to the State Board a corrective action plan. After obtaining a month-long extension of the deadline to submit the corrective action plan, the District first submitted an initial plan that the State Board rejected as "incomplete" and riddled with "various errors," and then submitted a revised plan that the State Board found did not "fully address the issues raised."

**C.** ***The Legislature and State Board dissolve the Sativa Water District's board of directors***

On September 28, 2018, the California Legislature enacted Assembly Bill No. 1577 (2017-2018 Reg. Sess.) (AB 1577) as an urgency measure. (Stats. 2018, ch. 859, §§ 2, 3, codified at Health & Saf. Code, § 116687.) AB 1577 granted the State Board the power to select an entity to administer the Sativa Water District using expedited procedures (Health & Saf. Code, § 116687, subd. (b)), and the authority to "order" the District's board of directors to "surrender all control" of itself "to the appointed administrator"—at which point in time the District's board of directors "shall thereafter cease to exist" (*id.*, subd. (c)(1)(A)).

Four days later, on October 2, 2018, the State Board gave notice of its intention to dissolve the Sativa Water District's board of directors and assign full management and control of the District to an administrator.

On October 31, 2018, the State Board issued an order appointing the County of Los Angeles (the County) to serve as the administrator, and directing the Sativa Water District to "immediately and unconditionally accept administrative and

4

managerial services" from the County and to allow the County "to exercise full authority and control over" the District, including "all technical, operational, administrative, and financial aspects of the entire water system." The State Board and the County entered into a contract appointing the County as the administrator of the District and authorizing the County to "[t]ake necessary steps to implement full and complete operational, fiscal, and managerial control." By operation of AB 1577's plain terms, the Sativa Water District's board of directors "cease[d] to exist" that day. (Health & Saf. Code, § 116687, subd. (c)(1)(A).)

**D.** ***The local LAFCO dissolves the Sativa Water District***

On July 11, 2018 (and hence a few months prior to the enactment of AB 1577), and in response to a study so recommending, the LAFCO for the County of Los Angeles (the County Commission) had passed a resolution to initiate proceedings to dissolve the Sativa Water District.

On December 26, 2018 (and hence a few months after the enactment of AB 1577 and dissolution of the District's board of directors), the County Commission gave public notice that, at its February 13, 2019, public hearing, it would be considering a proposed resolution ordering the dissolution of the District. The Legislature had, in AB 1577, reaffirmed the County Commission's authority to dissolve the Sativa Water District and to "designate[]" "a successor agency" using expedited procedures. (Health & Saf. Code, § 116687, subds. (c)(3) & (c)(4).) Following the public hearing, the County Commission adopted the proposed resolution; it was recorded—and hence took effect—on March 19, 2019.

5

In pertinent part, the County Commission's resolution:

- "[D]issolve[d] the Sativa . . . Water District."

- Designated the County as "the successor agency for the District, for the purpose[] of," among other things, "winding up the affairs of the District pursuant to [section] 56886[, subdivision (m),] and [section] 57451[, subdivision (c),] and subject to" AB 1577.  To facilitate this task, the order:

- "[V]ested" "[a]ll of the [District's] moneys or funds," "all property," and the "control of all books, records, papers, offices, equipment, supplies, . . . appropriations, licenses, permits, entitlements, agreements, contracts, claims, judgments, land, infrastructure, and other assets" "in the County as the successor agency."

- Granted the County "the power to exchange, sell, or otherwise dispose of" or "use" the above-described "funds, money or property of the dissolved District . . . for the purpose of winding up the affairs of the District."

- Granted the County the "power to" (1) "compromise and settle claims of every kind and nature," and (2) "to sue or be sued in the same manner and to the same extent as the District" "for the sole and exclusive purpose of winding up the affairs of the dissolved District."

## II. Procedural Background

### A. *Plaintiffs sue the Sativa Water District*

On July 9, 2018 (and hence days before the County Commission initiated the process to dissolve the District), four named individuals—Martha Barajas, Karen Lewis, Maria Jaime, and Soledad Aguirre (collectively, plaintiffs)—filed a putative class action lawsuit against the Sativa Water District.  In the operative first amended complaint filed on January 31, 2019,

6

plaintiffs sought classwide relief on the theory that the District's failure to provide potable drinking water (1) breached a contract, (2) constituted a nuisance, and (3) was the product of negligence.[2]

**B.** ***Plaintiffs add and then dismiss the County***

On April 29, 2019, plaintiffs substituted the County in lieu of a Doe defendant.

On September 30, 2020, plaintiffs moved to voluntarily dismiss the County as a defendant with prejudice, citing AB 1577's grant of "statutory immunity for its administration of the [Sativa Water D]istrict following [its] dissolution." The trial court granted the requested dismissal on October 15, 2020.

**C.** ***Plaintiffs succeed in certifying the class on all three claims, but the class is later decertified as to the nuisance claim***

1. *Class certification and notice*

On August 15, 2019, plaintiffs moved to certify a class as to all three claims in the operative complaint.

On April 27, 2020, the trial court certified a class of "all individuals who paid a monthly water utility payment to [the] Sativa [Water District] . . . at any time from March 13, 2017, to March 13, 2018." On December 7, 2020, the trial court approved plaintiffs' proposed notice to the class members.

---

[2] Plaintiffs also initially sued the five individual members of the District's board of directors, but voluntarily dismissed them without prejudice after recognizing that they were immune from liability in their individual capacities. (Accord, *Caldwell v. Montoya* (1995) 10 Cal.4th 972, 976-980 (*Caldwell*) [establishing immunity for individual board members].)

7

### 2.    *Partial decertification of the class*

On January 29, 2021, the Sativa Water District moved to decertify the class as to the nuisance claim on the ground that the District's interference with each resident's use and enjoyment of the land varied (because the water quality varied), thereby defeating the predominance of common issues necessary to maintain a class on that claim.  Following briefing and a hearing, the trial court on March 26, 2021, granted the motion and decertified the class as to plaintiffs' nuisance claim.

### D.    *The Sativa Water District's motion to dismiss*

On April 22, 2021, the Sativa Water District moved to dismiss plaintiffs' entire lawsuit.  Following briefing, a hearing, and supplemental briefing, the trial court granted the motion on September 9, 2021 (and entered its order to that effect a few months later).  As a threshold matter, the court construed the motion as one for judgment on the pleadings, and then granted the motion after finding that the District was not a "proper party."  The court reasoned that the District "cease[d] to exist as an entity" once the County Commission recorded its dissolution resolution on March 19, 2019, and that a lawsuit cannot be maintained against a nonexistent entity.  The court noted that the County Commission had designated the County as the "successor" agency to the District, but that the Legislature in AB 1577 had expressly granted the County immunity from any liability for its role as successor.[3]

---

[3]    The trial court also denied plaintiffs' motion for leave to amend its complaint to name, as a defendant, "Sativa Los Angeles County Water District, by and through its successor-in-interest/interim administrator, County of Los Angeles."  The

### E. *Plaintiffs' motion to vacate dismissal of the County*

On July 15, 2021—while the Sativa Water District's motion to dismiss was pending—plaintiffs moved to set aside the trial court's October 2020 order that had, at plaintiffs' request, dismissed the County as a defendant. After further briefing and a hearing, the trial court denied this motion at the same time it granted the District's motion to dismiss. The court reasoned that plaintiffs' motion was filed too late to qualify for relief as a statutory motion to vacate under Code of Civil Procedure section 473, and that "there [wa]s no basis" to exercise its inherent equitable power to vacate prior orders because doing so would be futile given that, due to AB 1577, the County is "immunized from the claims asserted" by plaintiffs in its "status as administrator and successor."

### F. *Plaintiffs appeal*

Upon entry of the judgment dismissing plaintiffs' action with prejudice, plaintiffs filed this timely appeal.

## DISCUSSION

In this appeal, plaintiffs assert that the trial court erred in (1) granting the Sativa Water District's motion for judgment on the pleadings, (2) denying plaintiffs' motion to vacate the order dismissing the County as a defendant, and (3) decertifying their class as to the nuisance claim.[4] Because, for the reasons set forth

---

court reasoned that the County was immune, such that amending the complaint to reinstate the County as a defendant was futile.

[4] Plaintiffs at times suggest that they also desire to reinstate as defendants the District's board members in their individual capacities, but we reject this suggestion because it is being raised for the first time on appeal (*Premier Medical Management*

9

below, we conclude that the trial court's first two rulings were correct, we have no occasion to reach plaintiffs' arguments attacking the third ruling.

## I. Dismissal of the Sativa Water District

### A. *Pertinent law*

#### 1. *Judgment on the pleadings*

As pertinent here, a motion for judgment on the pleadings is appropriate where the operative complaint "does not state facts sufficient to constitute a cause of action against [the named] defendant." (Code Civ. Proc., § 438, subds. (c)(1)(B)(ii) & (c)(3)(B)(ii).) A motion sought on this basis is equivalent to a demurrer (*People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777 (*Harris*)), such that our task is to examine the operative complaint's allegations and any judicially noticed documents in order to assess whether the pled cause of action is legally viable (*ibid.*; *Hart v. Darwish* (2017) 12 Cal.App.5th 218, 224). A cause of action is viable "only against a legal person"; no cause of action can be maintained "against an entity which is legally nonexistent." (*Oliver v. Swiss Club Tell* (1963) 222 Cal.App.2d 528, 537-538.)

We independently evaluate whether a trial court properly granted judgment on the pleadings. (*Harris, supra,* 59 Cal.4th at p. 777.) We also review de novo any subsidiary questions of law, such as those involving statutory interpretation or the

---

*Systems, Inc.* v. *Cal. Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564; *Newton v. Clemons* (2003) 110 Cal.App.4th 1, 11), and because it is utterly without merit given—as plaintiffs frankly acknowledged when they dismissed those defendants—the board members are indisputably immune from liability in their individual capacities (*Caldwell, supra,* 10 Cal.4th at p. 980).

application of the law to undisputed facts. (*Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 724 [statutory interpretation]; *Boling v. Public Employment Relations Bd.* (2018) 5 Cal.5th 898, 912 [application of law to undisputed facts].)

      2.     *Procedures for dissolving a local water district*
         a.    The Reorganization Act
            (i)    Generally

To stave off what was perceived to be a haphazard and often duplicative proliferation of local government entities (*San Bernardino Valley Water Conservation Dist. v. San Bernardino County Local Agency Formation Com.* (2009) 173 Cal.App.4th 190, 194), our Legislature enacted the Reorganization Act as a "comprehensive scheme" to provide a more "orderly" approach to the "formation and development of local [entities]." (§ 56301; *Sierra Club v. San Joaquin Local Agency Formation Com.* (1999) 21 Cal.4th 489, 495; *Las Tunas Beach Geologic Hazard Abatement Dist. v. Superior Court* (1995) 38 Cal.App.4th 1002, 1008.) Toward this end, the Act sets out the "sole and exclusive authority and procedure for the initiation, conduct, and completion of changes of organization and reorganization for cities and districts." (§ 56100, subd. (a).) "'Districts'" are "agenc[ies] of the state [that exist] . . . for the local performance of governmental or proprietary functions within limited boundaries" (and sometimes "outside [those] boundaries" if properly "authorized") (§ 56036, subd. (a)), and include "water agenc[ies]" except where an agency is specifically determined not to be a "'district'" (§ 56036.6).

To effectuate its more orderly approach, the Reorganization Act relies upon LAFCOs to serve as the

11

"'watchdog'" in each county.[5] (§§ 56027, 56325; *Southcott v. Julian-Cuyamaca Fire Protection Dist.* (2019) 32 Cal.App.5th 1020, 1026 (*Southcott*); *Timberidge Enterprises, Inc. v. City of Santa Rosa* (1978) 86 Cal.App.3d 873, 884.) Each LAFCO is tasked with approving or disapproving—in whole or in part—any proposal to change the districts within its geographic boundaries. (§ 56375, subd. (a)(1); *Fallbrook Sanitary Dist. v. San Diego Local Agency Formation Com.* (1989) 208 Cal.App.3d 753, 758-760 (*Fallbrook*).) The Act also lays out the specific procedures that must be followed to effectuate any "change" in a district, including its dissolution (§ 56021, subd. (h)).

                (ii)    The Act's procedures for dissolving districts

The Reorganization Act prescribes a three-step procedure for dissolving districts.

First, the LAFCO must be presented with a proposal to dissolve the district. Among other ways, that proposal may come from the LAFCO itself passing a resolution to dissolve the district.[6] (§ 56375, subd. (a)(2)(B); *Southcott, supra,* 32 Cal.App.5th at p. 1029.)

---

[5]    The Act spells out the composition of each LAFCO, and has a special definition for the composition of the LAFCO in Los Angeles County (§ 56326).

[6]    There are two other ways to initiate a proposal to dissolve a district—namely, (1) a third party may file a petition with the LAFCO seeking to dissolve the district (§§ 56650, 56870 [special requirements for petitions for dissolution]), or (2) the district's own legislative body may pass a resolution to dissolve the district (§§ 56650, 56654). Such proposals also trigger specific notice and hearing procedures. (§ 56658 [process when request initiated by

Second, the LAFCO must conduct a public hearing—preceded by advance notice—regarding the proposal.  (§§ 56662, subd. (b), 56666, 57008 [hearing required for a LAFCO-initiated proposal].)

Third, the LAFCO may then "order the dissolution."  (§ 57077.1, subd. (a).)  The LAFCO may not do so without first considering any other conflicting proposals for dissolution or other changes of organization submitted to the LAFCO.  (§§ 56657, 56655.)  An order to dissolve a district is subject to confirmation of the voters only if written protests have been lodged by a sufficient number of voters.  (§§ 57052, 57077.1, subd. (b)(3), 57078, 57094 [protest thresholds]; *Southcott, supra,* 32 Cal.App.5th at p. 1027.)[7]

---

petition or resolution]; *Julian Volunteer Fire Co. Assn. v. Julian-Cuyamaca Fire Protection Dist.* (2021) 62 Cal.App.5th 583, 590.)

[7]     Under prior versions of the Act, the LAFCO lacked the unilateral authority to approve the dissolution process; after the LAFCO approved a change, secondary approval was required by the local "conducting authority"—that is, the "legislative body" of the "affected city," "county" or "district."  (Former §§ 57077, 56029; *Fallbrook, supra,* 208 Cal.App.3d at p. 759.)  As noted above, the current version of the Act grants the LAFCO the power to initiate the dissolution process on its own; the current version does so, in part, by designating the LAFCO itself to be a "conducting authority."  (§§ 57077.1, 56029; accord, *Tracy Rural County Fire Protection Dist. v. Local Agency Formation Com. of San Joaquin County* (2022) 84 Cal.App.5th 91, 108-109 [acknowledging statutory changes post-*Fallbrook*].)

(iii)    The terms and conditions of dissolution of a district

On the day a dissolution order becomes "effective," the "district shall be dissolved, disincorporated, and extinguished, its existence . . . terminated . . . and all of its corporate powers . . . cease." (§ 57450.)

When it comes to winding up the dissolved district's affairs, the Act gives the LAFCO overseeing the dissolution two options.

First, the LAFCO may specify that the dissolved district is to wind up its own affairs. (§§ 56035, 57450.)

Second, and alternatively, the LAFCO may designate a "local agency" as the "successor" for the district and task the successor agency with "winding up the affairs of the dissolved district." (§§ 56035, 57451, 56078.5.) If the LAFCO takes this option, the Act provides that upon dissolution of the district:

• "[A]ll of the moneys or funds" and "all property . . . of the dissolved district is vested in the successor [agency] for the purpose of winding up the affairs of the district." (§ 57452.)

• The successor agency is granted the power to "use" "any funds, money, or property of [the] dissolved district" as well as "to exchange, sell, or otherwise dispose of all property . . . of the dissolved district" "for the purpose of winding up the affairs of the district." (§§ 57463, 57453; see also, § 57455.)

• The successor agency is granted the "power[]"— "[f]or the sole and exclusive purpose of winding up the affairs of the dissolved district" and "until the time when the affairs of the dissolved district have been completely wound up"—to (1) "compromise and settle claims of every kind and nature," and (2) "sue or be sued in the same manner and to the same extent as the

14

dissolved district and the officers and legislative body of the dissolved district." (§ 57453.)

No matter which option the LAFCO takes, the LAFCO has the power to impose "terms and conditions" of dissolution that deviate from the "terms and conditions" that the Reorganization Act sets forth as the default terms. (§§ 57302, 56886, subd. (v).)

### b. AB 1577

Taking effect as an urgency measure on the day it was enacted, AB 1577 deals specifically—and solely—with the Sativa Water District. In order to address that district's long-running failure to provide the residents it served with potable drinking water, AB 1577 changed the law in three ways pertinent to this appeal. First, AB 1577 authorized the State Board to immediately dissolve the District's board of directors and to appoint the County to administer the District. (Health & Saf. Code, § 116687, subd. (c)(1)(A).) Second, AB 1577 gave the County Commission (as the LAFCO for the County of Los Angeles) the option to dissolve *the District itself* and name a successor agency. (Health & Saf. Code, § 116687, subd. (c)(4).) Third, AB 1577 excused the County Commission from following all of the Act's usual procedures for dissolving districts (*id.*, subd. (c)(3)) and also protected the County—in its role as "administrator" and "successor" agency—from being "held liable for claims by past or existing district ratepayers or those who consumed water provided through the district concerning the operation and supply of water from the district" at any time before the County took the reins as administrator. (*Id.*, subds. (f) & (g).)

15

**B.** *Analysis*

We independently agree with the trial court's conclusion that plaintiffs' claims against the Sativa Water District must be dismissed because the judicially noticed documents indicate that the District was properly dissolved in accordance with the Reorganization Act.  Specifically, the Act granted—and AB 1577 reaffirmed—the County Commission's authority to name a successor agency, and the County Commission later exercised that authority by (1) designating the County as the successor agency to the Sativa Water District, (2) transferring all of the District's assets to the County, and (3) tasking the County with "winding up" the District's affairs (accord, § 57450 et seq.).  Because the County Commission tasked *the County* with winding up the District's affairs, *the District* was not doing so and hence had no further function to carry out; it could not continue as a defendant.

Plaintiffs resist this conclusion with what can be grouped into four arguments.

First, plaintiffs argue that sections 56035 and 57450—which are part of the Reorganization Act—define "dissolution" as "the disincorporation, extinguishment, or termination of the existence of a district and the cessation of all its corporate powers, except as the [LAFCO] may otherwise provide pursuant to section 56886 *or* for the purpose of winding up the affairs of the district." (§§ 56035, 57450, italics added.)  Plaintiffs read this statute as saying, "a district ceases to exist once it is dissolved" *except* (1) when a LAFCO provides otherwise, *or* (2) for the purpose of winding up affairs; in plaintiffs' view, the use of the italicized "or" means that a district *always* continues to exist for purposes of winding up its own affairs, which in turn includes

16

defending litigation.  This plain text, plaintiffs insist, must be followed.

We reject this argument for two reasons.

To begin, we agree with plaintiffs that the best indicator of legislative intent is the text of a statute.  (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1233).  However, we must also read a statutory scheme like the Reorganization Act as a whole.  (*Meza v. Portfolio Recovery Associates, LLC* (2019) 6 Cal.5th 844, 856.)  Although sections 56035 and 57450 might, upon first blush, suggest that a district always continues to exist—notwithstanding its dissolution—for purposes of winding up its affairs, those statutes merely set up *default* terms and conditions for dissolution under the Act.  As noted above, the Act elsewhere provides that the LAFCO has the power to specify the "terms and conditions" that apply upon dissolution in a specific case, and those specific terms "control over the general provisions" governing dissolution under the Act.  (§§ 57302, 56886, subd. (v).)  Here, the County Commission specifically designated the County as the District's successor, transferred the District's assets to the County, and explicitly tasked the County with using those assets to "wind[] up the affairs of the District."  These specific terms control.

Further, construing sections 56035 and 57450 as mandating that a dissolved district *always* continues to exist to wind up its affairs leads to an absurd result, which also counsels strongly against that construction.  (*Lopez v. Ledesma* (2022) 12 Cal.5th 848, 858-859.)  Plaintiffs' argument means that—notwithstanding the County Commission's designation of the County as the District's successor agency for purposes of winding up the District's affairs—the District *also* still exists for purposes of winding up the District's affairs.  But how can both entities

17

wind up the affairs of the District, when only one of them (the County) has ownership and control over the District's assets necessary to do so?  Because it is nonsensical in this context for the District to continue to exist to wind up its own affairs, we decline to read the Act as mandating this result.

Second, plaintiffs argue that it is a "consistent principle in California statutes and case law" that *all* entities have a winding up period after their dissolution (and hence can be sued during that period).  The Sativa Water District may no longer have an "*operational* existence," plaintiffs urge, but it still has a "*legal* existence" under this principle.  To illustrate this principle, plaintiffs cite Water Code section 33241 and Corporations Code sections 2010 and 2011.[8]  These statutes are irrelevant:  Water Code section 33241 deals specifically—and, critically, *solely*—with the Costa Mesa County Water District (Wat. Code, §§ 33240, 33200, 33201, 33215), and the Corporations Code deals specifically—and, critically, *solely*—with the dissolution of "corporation[s] organized under [that] division" of the Code (Corp. Code, § 162).  Neither deals with the Sativa Water District created by a nearly century-old provision of the Water Code, and neither supports a general principle that would trump the more specific terms of the Reorganization Act.  (*Southcott, supra*, 32 Cal.App.5th at p. 1027 ["special provisions control over the more general provisions of the Reorganization Act"]; see generally,

[8]      Plaintiffs also cite *North American Asbestos Corp. v. Superior Court* (1986) 180 Cal.App.3d 902 (*North American*) in support of their view that the Corporations Code applies to more than just California-created corporations; however, our Supreme Court overruled that specific holding of *North American* in *Greb v. Diamond Internat. Corp.* (2013) 56 Cal.4th 243, 272-273.

*AIDS Healthcare Foundation v. City of Los Angeles* (2022) 86 Cal.App.5th 322, 335 ["'it is a basic rule of statutory construction that specific statutes control general ones'"].)

Third, plaintiffs argue that we must construe the Reorganization Act to authorize a lawsuit against the Sativa Water District because, in light of AB 1577's grant of immunity to the County, any other outcome would be inconsistent with legislative intent because, in plaintiffs' view, it is "impossible to conclude that the Legislature intended to slam the courthouse door shut" on plaintiffs by cutting off suit against the District *and* the County. We do not find this outcome to be inconsistent with the Legislature's intent. AB 1577 was meant to solve an urgent problem—namely, the Sativa Water District's persistent failure to do its job of providing potable drinking water to residents. The Legislature's concern was fixing that problem immediately. Thus, AB 1577 authorized the State Board to appoint an administrator and the County Commission to dissolve the District and appoint a successor agency—all using expedited procedures. A logical way to induce the County to agree to assume those duties was to grant it immunity. Indeed, our Legislature found such immunity not only to be logical, but also to be critical to incentivizing *someone* to assume stewardship of the District's infrastructure, as it explained in the legislative history for AB 1577: "[N]o public agencies have been willing to acquire Sativa because of its water quality violations and more than $10 million in deferred maintenance and infrastructure improvements." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill 1577 (2017-2018 Reg. Sess.) as amended Aug. 7, 2018, pp. 5-6.) Our Legislature accordingly made its intent to immunize the County against liability to

19

pending lawsuits like plaintiffs' crystal clear (Health & Saf. Code, § 116687, subd. (f)), and our Legislature may cut off potential recovery in pending lawsuits as long as it speaks with a clear voice (*Carr v. State of California* (1976) 58 Cal.App.3d 139, 147; accord, *Beverly Hilton Hotel v. Workers' Comp. Appeals Bd.* (2009) 176 Cal.App.4th 1597, 1604). Plaintiffs may be understandably upset with the Legislature's policy assessment of the situation, but that does not justify rewriting the Reorganization Act to effectuate an outcome at odds with that assessment.

Fourth and finally, plaintiffs argue that the fact that the Sativa Water District's insurer is continuing to defend the lawsuit somehow means that the District is still a proper defendant or that the District has somehow waived its right to litigate its nonexistence by participating in the case for nearly three years. Ironically, it is plaintiffs who have waived these particular arguments by playing hide-and-go-seek with them before the trial court: They raised the "insurer is still here" argument for the first time at the hearing on the District's motion to dismiss, but when the court gave plaintiffs the opportunity to brief the issue, they opted not to do so and the court deemed the issue waived. They cannot resurrect it now. Even if we ignore this waiver, plaintiffs' arguments lack merit because, contrary to what plaintiffs implicitly posit, an insurer is not the stand-in for the insured. Plaintiffs can often sue the insured, but cannot sue the insurer until there is a judgment or assignment of rights. (*Shaolin v. Safeco Ins. Co.* (1999) 71 Cal.App.4th 268, 271.) That is also why the insurer's continued involvement has no effect whatsoever on whether *the District* ceases to exist and hence can be sued.

20

## II. Refusal to Reinstate the County As a Defendant

Where, as here, a party seeks to vacate an order dismissing a case more than six months after the dismissal order was issued,[9] that party must ask the court to exercise its inherent equitable power to vacate orders secured by "extrinsic fraud" or "extrinsic mistake." (*Kulchar v. Kulchar* (1969) 1 Cal.3d 467, 470-472; *Mechling v. Asbestos Defendants* (2018) 29 Cal.App.5th 1241, 1245-1246.) A court may exercise this power only if the moving party demonstrates, at a minimum, that it has "a meritorious case"—that is, "a good claim or defense which, if asserted in a new trial [once the prior order dismissing the case is vacated], would be likely to result in a judgment favorable to him." (*In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051, 1071 (*In re Marriage of Stevenot*); *Page v. Insurance Co. of North America* (1969) 3 Cal.App.3d 121, 130.) While the exercise of this equitable power is "not governed by any statutory time limit" (*Department of Industrial Relations v. Davis Moreno Construction, Inc.* (2011) 193 Cal.App.4th 560, 570-571), "there is a strong public policy in favor of the finality of judgments" that counsels against exercising that power outside the six-month statutory deadline absent "exceptional circumstances" (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 982 (*Rappleyea*); *In re Marriage of Stevenot, supra*, at p. 1071). We review a trial court's order

---

**9** When the motion to vacate the order of dismissal is filed within six months of the order, the moving party may invoke the court's statutory authority to vacate under Code of Civil Procedure section 473, subdivision (b). It is undisputed, however, that plaintiffs' July 2021 motion was filed more than six months after the October 2020 order dismissing the County. Thus, we need not consider the manifold ways in which that statutory relief is unavailable to plaintiffs.

denying a motion to vacate a dismissal under either mechanism for an abuse of discretion. (*Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 503; *Rappleyea*, *supra*, at p. 981.)

The trial court here did not abuse its discretion in declining to exercise its inherent, equitable power to reinstate the County as a defendant. That is because plaintiffs cannot demonstrate that they have a meritorious case for the simple reason—the very same reason plaintiffs cited when *they* dismissed the County in the first place—that AB 1577 renders the County absolutely immune from liability for the claims plaintiffs seek to vindicate in this case. (Health & Saf. Code, § 116687, subd. (f).)

Plaintiffs try to sidestep the seemingly absolute inapplicability of the court's equitable power to vacate by asserting that the trial court's dismissal order was void when it was entered (and hence need not be vacated at all); specifically, they assert that the dismissal order was void because the trial court did not comply with (1) California Rules of Court, rule 3.769, and (2) California Rules of Court, rule 3.770.

These arguments lack merit.

Rule 3.769 is irrelevant because it applies to *settlements* of a class action, not the voluntary dismissal of one of several defendants.

Rule 3.770 applies here, but its dictates have been satisfied. Under this rule, the dismissal of a party to a class action is valid only if (1) the court has approved the dismissal (Cal. Rules of Court, rule 3.770(a)), and (2) proper notice of the dismissal has been given (*id.*, rule 3.770(c)). Where notice of a class action had not already been given to the class members by the time of the dismissal (as it was not here because the October 2020 dismissal of the County preceded class notice in early 2021, the "proper

22

notice" requirement is met if either (1) notice is "given in the manner and to those class members specified by the court," or (2) the court "finds that the dismissal [of the party] will not prejudice" the class members. (Cal. Rules of Court, rule 3.770(c).) Although the trial court here did not make an *express* finding that dismissal of the County would not prejudice the class members, we may infer an *implied* finding of no prejudice. (Cf. *Citizens of Humanity, LLC v. Ramirez* (2021) 63 Cal.App.5th 117, 124 [dismissal of class action without prejudice and without notice means court "impliedly found the class members would not be prejudiced by the dismissal"]; *Mass. Mutual Life Ins. Co. v. Superior Court* (2002) 97 Cal.App.4th 1282, 1287-1288 [findings necessary to support the trial court's order may be implied if supported by substantial evidence].) More to the point, that implied finding is unassailably correct because subdivision (f) of Health and Safety Code section 116687 bars imposing any liability on the County. Plaintiffs respond that they were prejudiced by the dismissal of the County because, in their view, the trial court might not have dismissed the Sativa Water District if the County had still been a defendant. This argument is based wholly on speculation. Further, it is squarely refuted by the analysis in this case, which shows that plaintiffs' speculation is wrong: The dismissal of each defendant was inevitable as a matter of law because the County is immune and the District is legally nonexistent; plaintiffs' action was therefore not viable as a whole.

23

## DISPOSITION

The judgment is affirmed. The Sativa Water District is entitled to its costs on appeal.

**<u>CERTIFIED FOR PARTIAL PUBLICATION</u>**.


_____, J.
HOFFSTADT


We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.*
KWAN


---

\*      Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

24